COVELL *vs.* HITCHCOCK.

The right of *stoppage in transitu* of goods sold, continues whilst they remain in the hands of a *warehouse-man*, though at the place to which they were directed to be sent; if that be an intermediate point between the place of sale and the *ultimate destination* of the goods.

Whether a plaintiff, after having claimed to exercise the right of *stoppage in transitu*, can vary his ground of recovery on the trial, by setting up *fraud* in the obtaining of the goods, *quere.*∗

[ *612 ] ERROR from the supreme court. This was an action of *trover*, brought by Hitchcock against Covell, sheriff of the county of Chemung, for selling, by virtue of an execution against one *Hobart Graves, junior*, a quantity of merchandize sold by the plaintiff to Graves, which he claimed the right to stop *in transitu*, in consequence of the *insolvency* of

———————

∗ Case decided 21st August, 1840.

Graves. In April, 1832, the plaintiff in New-York sold the goods to Graves, who resided at *Willardsburgh.* Graves directed the goods to be shipped on board a lake or canal boat bound to the village of *Havana ;* they were boxed, directed to Graves at *Willardsburgh,* and put on board a canal boat on the 12th May. *Willardsburgh* is upwards of thirty miles beyond *Havana.* The latter place was at that time at the head of navigation in the direction to Willardsburgh, and the course of business was to deposit goods brought by canal and lake boats at *Havana,* there being no public carriers beyond that place, and the *warehouseman* keeping the goods until called for or ordered on by the owners. The goods arrived at *Havana* on the *24th May,* and were deposited in a *warehouse,* where they were immediately levied upon by a deputy of the defendant. *Previous* to the sale, the plaintiff gave notice to the sheriff of the sale of the goods, that the price remained unpaid, and that he claimed the right of *stoppage in transitu* in consequence of the insolvency of Graves ; and subsequently, previous to the sale by the sheriff, a second demand was made by the plaintiff, without specifying any grounds of claim. On the *28th May,* Graves came with a team to *Havana* for the goods. On the trial of the cause, evidence was given tending to show that the purchase by Graves was *fraudulently* made : this evidence was objected to by the defendant's counsel, who insisted that the plaintiff, having in the notice to the sheriff placed his claim upon the right of *stoppage in transitu,* was precluded from assuming any other ground of recovery; but the objection was overruled. The plaintiff recovered, and the supreme court refused a new trial. *See* 20 *Wendell,* 167. The defendant sued out a writ of error.

*J. A. Spencer,* for plaintiff in error.

*J. A. Collier,* for defendant in error.

*By the CHANCELLOR. The first question which arises in this [ *613 ] cause, is upon the right of the vendor to stop the goods in *transitu* after they arrived at Havana. The law appears to be well settled that the right of stoppage in *transitu* exists so long as the goods remain in the hands of a middleman on the way to the place of their destination, and that the right terminates, whenever the goods are or have been, either actually or constructively delivered to the vendee ; a delivery to the general agent of the vendee is of course tantamount to a delivery to himself. The time during which the right exists, therefore, is during the whole period of the transit, from the vendor to the purchaser, or the place of ultimate destination, as designated to the vendor by the buyer ; and this transit continues so long as the goods remain in the possession of the middleman, whether he be the carrier either by land or by water, or the keeper of a warehouse or place of deposite connected with the transmission and delivery of the goods. Here the plaintiff in error contends that the delivery at the public ware-

house at Havana was a delivery to the vendee, because by the course of trade, there was no public carrier between there and the place of final destination, at his residence in Willardsburgh ; and the case is attempted to be likened to that of *Dixon* v. *Baldwin*, 5 *East's R.* 175, where goods were by the course of trade sent to the purchasers' own agents at *Hull*, to remain there until such agent received orders from the purchasers when and to whom to ship them at Hamburgh, where they were in the habit of sending such goods. That case was rightly decided ; for as between vendor and vendee, *Hull* was the place of destination of the goods ; and the delivery to the agents of the vendees at Hull, was tantamount to a delivery to themselves. Although it is difficult to distinguish the case from that of *Stokes* v. *La Riviere*, 3 *Durn. & East*, 466, where Lord Mansfield held that a delivery to the special agent of the purchaser in London, to be forwarded by him to Ostend, was not a constructive delivery to the purchaser so as to divest the right of stoppage in *transitu*. In the present case the goods were directed to the vendee, at his place of business, at Willards-
[ *614 ] burgh, and they were delivered *at the warehouse at Havana, merely because that was a point in the transit, and not because the warehouseman was the general agent of the purchaser. The fact that there was no public conveyance between Havana and Willardsburgh, and that it therefore was necessary for the vendee to send on teams himself, to complete the transit, I apprehend could not defeat the right of stoppage, while the goods remained in the hands of the warehouseman, who was a middleman merely, and not the general agent of either the vendor or of the vendee. If the purchaser had sent on his own teams, and thus obtained the possession of the goods, on a delivery thereof to his own teamsters by the warehouseman, before the right of stoppage had been exercised, a different question might have been presented.

The case of *Edwards* v. *Brewer*, 3 *Meeson & Wels. Rep.*, 375, is in some respects like the present. It also shows that a delivery to a warehouseman or wharfinger at the place of the ultimate destination of the goods, who does not receive them as the mere agent of the purchaser, but in the ordinary course of his business as a middleman, is not a constructive delivery to the purchaser, so as to put an end to the right of stoppage in *transitu*. There the goods were sold, to be delivered at the port of *London*. The master of the vessel on arriving at that port, called at the office of the purchaser, and requested his clerk to send for the goods ; and told him that if he did not, he should be under the necessity of landing them at the wharf, where his vessel was then lying. The clerk promised to send a note to the wharf office ; and he accordingly sent a note to the master of the vessel, saying that the purchaser was from home, but that he had better land the goods at that wharf, on his account. He accordingly landed them, but had it entered in the wharfinger's books, that the freight and charges

were to be paid before the delivery of the goods. Lord Abinger, and the other judges of the court of exchequer held, in that case, that the delivery of the goods to the wharfinger, did not prevent the right of stoppage in *transitu*, until the vendee had actually called and taken possession of them ; that the note of the clerk was not a peremptory order, but only an expression *of opinion ; and that the wharf, although it was   [ *615 ] the place where the vendee was to call and receive the goods, was only a place of deposit, in *transitu*. *See also Nicholls* v. *Le Feuvre*, 2 *Scott's Rep*. 146 ; *Jackson* v. *Nichol*, 7 *Id*., 577, and *James* v. *Griffin*, 2 *Mees. & Wels. Rep*. 622.

Having arrived at the conclusion that the vendor's right of stoppage *in transitu* was not at an end by the deposite of the goods in the public store-house at Havana, it follows, of course, that the right was not divested by the levy of the execution before the receipt of the goods by the vendee. *Le Ray De Chaumont* v. *Griffin*, 15 *Wendell*, 144. The right of the plain-tiff in the court below having been duly exercised, and *notified to the sheriff before the sale*, the latter was properly chargeable with the value of the goods, or at least, to the extent of the lien for the purchase money. This is sufficient to sustain the judgment of the court below. It is therefore unnec-essary for me to examine the other grounds upon which the plaintiff claimed the right to recover at the trial ; though I am inclined to the opinion that it was too late at the trial to attempt for the first time to repudiate the sale of the goods on the ground of the alleged fraud, of which the sheriff had not been previously apprised.

Upon the ground that the right to stop the goods *in transitu* still existed, and was duly exercised by the vendor, I shall vote to affirm the judgment.

The judgment of the supreme court was accordingly AFFIRMED, by a vote of 14 for affirmance, 2 for reversal.