AUBREY, (UNITED STATES v.) See Case No. 14,476.

AUDENRIED, (CROOK v.) See Case No. 3,412.

AUDENRIED, (KEEN v.) See Case No. 7,639.

## Case No. 644.

AUDENRIED v. RANDALL et al.

[3 Cliff. 99; [1] 7 Amer. Law Reg. (N. S.) 659.]

Circuit Court, D. Maine. April Term, 1868.

SALE—CONTRACT—DELIVERY—WHEN TITLE PASSES—STOPPAGE IN TRANSITU—SALE BY CONSIGNEES—STATUTE OF FRAUDS.

1. It is a general principle that if parties have contracted to sell and buy a specific article of personal property, of which weight, price, measure. and fitness are definitely prescribed, or if the terms of the contract provide suitable means by which those qualities, or conditions may be ascertained, and the articles are in the state, for which the parties contracted, the property passes eo instanti, by virtue of the contract, without delivery.

2. Where the terms of an executory contract of sale are agreed, and everything the seller has to do is complete, the buyer is entitled to the goods on payment or tender of the price, and not otherwise, when nothing is said as to the time of delivery or payment.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

3. If the goods are sold on credit, and the contract silent as to time of delivery, the vendee is entitled to immediate possession, and the right of property vests at once in the buyer, subject to the vendor's right of stoppage in tran situ, if exercised before possession by the buyer.

4. As between parties, when the contract is complete, the property vests in the buyer; as to every one except the vendor, delivery of possession is necessary to every valid conveyance of personal property.
[Cited in Waring v. Mayor, etc., of Mobile, 8 Wall. (75 U. S.) 120.]

5. Where actual delivery is impracticable, or impossible, symbolical delivery will be equivalent in its legal effect.
[Cited in Waring v. Mayor, etc., of Mobile, 8 Wall. (75 U. S.) 120.]

6. Mere words, however, in case of the impracticability of actual delivery, will not suffice to constitute delivery and acceptance of goods. Added to the language of the contract, there must be some act of the parties tantamount to a transfer and acceptance, as where by some act dominion over the goods is relinquished by the vendor, and they are put in the power of the vendee.
[Cited in Waring v. Mayor, etc., of Mobile, 8 Wall. (75 U. S.) 120.]

7. As against subsequent purchasers or judgment creditors, delivery is necessary, but where actual manual occupation is impossible, from the character or situation of the goods, it cannot be admitted that no legal delivery can be made.

8. Under such circumstances valid sale is sufficient to take the case out of the operation of the statute of frauds if it appear that the title becomes absolute in the buyer discharged of all liens of the vendor.

9. The right of stoppage in transitu attaches to goods sold on credit, where nothing is agreed as to time of delivery. Then the vendee is immediately entitled to the property and the right of possession, but the latter is not absolute, being liable to be defeated if he becomes insolvent before he obtains absolute control.

10. Where there has been a sale by the consignee, which would, independently of the indorsement of the bill of lading, as against the consignor, give title to the vendee, the effect of the indorsement would be to take away the right of stoppage in transitu, in cases where otherwise it would exist.

11. Parties in Philadelphia consigned a cargo of coal to parties residing in Boston, to be delivered at Portland, and the consignees named in the bill of lading indorsed and delivered the same to the defendants, at their request, at a certain price per ton for the coal, with the right in the plaintiffs to draw for the amount at any time. *Held*, the terms of the sale were absolute, as also was the indorsement and delivery of the bill of lading, and defeated the right of stoppage in transitu, as against the purchaser.
[Cited in Waring v. Mayor, etc., of Mobile, 8 Wall. (75 U. S.) 120.]

12. It would make no difference in this case, if the consignees named in the bill of lading were only agents of the shippers of the coal, because two days after the arrival of the vessel, and after the master notified the defendants that he was ready to deliver, the plaintiff approved the sale, and insisted that defendants were bound by the contract.

13. It makes no difference in such case whether the consignee be the buyer of the goods or a factor. His transfer is equally capable of divesting the property of the owner, and vesting it in the indorsee of the bill of lading.

14. Where there is no actual delivery, a sale of goods may be valid at common law, and the contract be within the statute of frauds; but if there be a delivery, though symbolical, sufficient to transfer the property even as against the creditors of the seller and subsequent purchasers, and to the exclusion of the right of stoppage in transitu, there need not be anything more than would be sufficient to constitue a delivery, and to change the property at common law.

15. Mere delivery of a bill of lading is not enough, without a distinct acceptance of the same by the purchaser, but anything which was intended to be so, and received as such, which actually puts the goods within the reach and power of the buyer; and among the instances of such delivery cited by legal writers, is that of the indorsement of a bill of lading.

16. This case is wholly different from that of the holder of an ordinary order, as the consignee of a bill of lading has such a property that he can assign it over, and acceptance in such a case is acceptance of the goods, takes the case out of the operation of the statute of frauds, and vests the absolute dominion of the goods in the buyer. If it were otherwise, still in this case, the plaintiff would be entitled to judgment, because the delivery of the bill of lading and the bill of coal were made at the date of the contract, and the defendants subsequently offered to pay the plaintiffs a certain sum per ton to take back the goods, and release them from the contract, after which the defendants still retained the bill of lading and the bill of goods.

At law. Special assumpsit, together with the common counts for goods sold and delivered, and for money had and received. The substantial charge of the special counts was, that the plaintiff at the request of the defendants, on the 16th of March, 1865, bargained and sold to the defendants a certain quantity of coal called "Broad Top Coal," being the cargo of the brig Russian, then on her voyage from Philadelphia to Portland, as per bill of lading of the 30th of the same month, amounting to 289 tons, and that the defendants subsequently, when the vessel arrived with the coal on board, refused to receive it and pay for the same, as they had agreed to do. The contract price of the coal was $11.50 per ton, and the freight $6.50 per ton. The plea was the general issue, but the parties, after the evidence was introduced on both sides, withdrew the case from the jury by consent, and submitted the same to the court, under the act of congress in such case made and provided. Most of the material facts were undisputed, and they may be stated in a very few words.

Plaintiff was a merchant doing business in Boston, and the defendants were citizens of Maine doing business in Portland. Wanting to purchase coal, the defendants, on the 16th of March, 1865, called on the plaintiff at his place of business, and inquired if he, the plaintiff, had any soft coal on the way from Philadelphia, or, if not, whether he would not ship them a cargo of such coal; and being told that the plaintiff had just received

a bill of lading for a shipment of such a cargo, bound to Portland, the defendants inquired if it was for sale, and if so, at what price the plaintiff would sell the coal. The price asked was $12 per ton for the coal, and the frieght was $6.50 per ton; but, as finally agreed, the price including freight was $18. Defendants agreed to purchase at that price, and the consignees—named in the bill of lading, A. C. Morse & Co.—indorsed and delivered to the defendants the bill of lading, which was introduced as evidence by the plaintiff. The bill of lading bore date on the 13th of March, 1865, and appeared to have been duly executed at Philadelphia on that day; and the bill of coal given by the plaintiff bore the same date, but the proof showed that it was written and delivered at Boston at the time the bill of lading was indorsed and delivered by the consignees, and that it was a part of that transaction. Payment was to be made in cash, and the plaintiff proved that he had a right to draw for the amount at any time. Freights immediately declined, and the agent of the plaintiff, one of the consignees, about a week after the indorsement and delivery of the bill of lading, being in Portland where the defendants resided, they requested him to sell the cargo to some other party, and offered to give him one dollar per ton if he would take the coal off their hands; the reason assigned for the request by the defendants was, that they should make a loss if they took the coal, but the agent of the plaintiff declined to accept the proposition. The proofs also showed that the vessel arrived at Portland, March 29, 1865, with the coal on board, in good condition, and that the master notified the plaintiff by telegraph of her arrival, and that the defendants refused to receive the coal. On the last day of March, one of the defendants called at the plaintiff's place of business and informed him, or one of the consignees, that the vessel had arrived, and requested him to come to Portland and take care of the coal or to sell it, and at the same time stated that if the plaintiff would do so, they would bear a part of the loss, and that they would make up the residue in other purchases of him in the course of the year. The plaintiff refused the proposition, and the defendants informed him that they, the defendants, would have nothing to do with the coal. The response of the plaintiff to that suggestion was, that if the defendants refused to receive the coal, he would sell it on their account, and charge them the difference. He also wrote them to that effect on the same day, in consequence of a telegram from the master that the defendants still refused to receive the coal. Some other correspondence between the parties was also introduced in evidence, but it contained nothing which is very material. The letter of the plaintiff to the defendants, dated March 31, of the same year, showed that they received the telegram from the master; and a telegram [2] from the defendants to the plaintiff, dated the 1st of April following, showed that the defendants on that day enclosed to the plaintiff the bill of lading of the cargo, and the bill of the coal which they received at the time the contract was made. The defendants refused to receive the coal, and thereupon the plaintiff advertised and sold the coal at public auction.

Davis & Drummond, for plaintiff.
Rand & Rand, for defendants.

CLIFFORD, Circuit Justice. The principal defence is, that the contract was within the statute of frauds, and void. The contract was made in Massachusetts, and the statute there provides that no contract for the sale of goods, wares, or merchandise for the price of $50 or more shall be good or valid until the purchaser accepts or receives part of the goods so sold, or gives something in earnest, to bind the bargain, or in part payment, or unless some note or memorandum in writing of the bargain is made and signed by the party to be charged thereby, or by some person by him thereunto lawfully authorized. Gen. St. 327. Where the statute does not apply, it may be laid down as a well-settled general principle, that if the parties have agreed, one to buy and the other to sell specific articles of personal property, of which the price, weight, measure, and requisite fitness are definitely prescribed, or if the terms of the contract provide suitable means by which those qualities or conditions may be ascertained, and the articles which are the subject of the negotiation are in the state for which the parties contracted, the property passes eo instanti, by virtue of the contract of sale, and without delivery. Repeated decisions have affirmed the rule, that when the terms of sale are agreed between the parties, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute, as between the parties, without actual payment of the price or delivery of the articles, and the property and the risk of accident to the goods vest in the buyer, subject to certain qualifications. He is entitled to the goods on payment or tender of the price, and not otherwise, when nothing is said at the sale as to the time of delivery or the time of payment. But if the goods are sold upon credit, and the terms of the contract are silent as to the time of delivery, the vendee is entitled to the immediate possession, and the right of property vests at once in the buyer, subject to the seller's right of stoppage in transitu, if exercised before the former actually obtains possession. Leonard v. Davis, 1 Black, [66 U. S.] 483; Tome v. Dubois, 6 Wall. [73 U. S.] 548; 2 Kent, Comm. (11th Ed.) 658; Hinde v. Whitehouse, 7 East, 571; Homes v. Crane, 2 Pick. 607; D'Wolf v. Harris, 4 Mass. 515, [4 Mason,

---

[2] [7 Amer. Law Reg. 659, gives "letter."]

Case No. 4,221;] Grosvenor v. Phillips, 2 Hill, 147.

Executory contracts only are the subject of remark on the present occasion, as it is clear that when the contract has been in fact fully performed, the rights, duties, and obligations of the parties resulting from such performance stand unaffected by the statute. Stone v. Dennison, 13 Pick. 4; Browne, St. Frauds, p. 118, § 116. Although it is true, as between the parties, that the property vests in the buyer without delivery, when the bargain is complete, and everything is done by the seller which the terms of the contract prescribed, yet it is equally true, as is perfectly well established, that as against every one, except the vendor, a delivery of possession is necessary in every valid conveyance of personal property. Lanfear v. Sumner, 17 Mass. 110; Caldwell v. Ball, 1 Term R. 205. Actual delivery, however, is often impracticable from the cumbrous nature of the article, and sometimes impossible on account of the situation, or because not present, as in the case of goods or ships at sea. Symbolical delivery will in such cases be sufficient, and equivalent, in its legal effect, to actual delivery without the actual manual occupation by the purchasers. Leonard v. Davis, 1 Black, [66 U. S.] 482; 2 Kent, Comm. (11th Ed.) 671; Frostburg Min. Co. v. New England Glass Co., 9 Cush. 118. Delivery of the key of the warehouse in which goods sold are deposited, or transferring them on the books of the warehouseman or wharfinger to the name of the buyer, is in general sufficient to transfer the property, under the terms of a proper contract to that effect. Chaplin v. Rogers, 1 East, 194; Dodsley v. Varley, 12 Adol. & E. 632. So the delivery of the receipt of the storekeeper for the goods, being the documentary evidence of the title, has been held to be a constructive delivery of the goods. Wilkes v. Ferris, 5 Johns. 335.

Timber, logs, or other lumber floating in the water, are only in the constructive possession of the owner, and under such circumstances only a symbolical delivery in case of sale is all that can be expected, and is amply sufficient to pass the title, as between the parties. Ludwig v. Fuller, 17 Me. 162; Boynton v. Veazie, 24 Me. 288; Macomber v. Parker, 13 Pick. 175. Mere words, however, even in the case of cumbrous articles, are not sufficient to constitute a delivery and acceptance of goods, such as the statute requires. Superadded to the language of the contract, there must be some act of the parties amounting to a transfer of the possession, and an acceptance thereof by the buyer, as where the seller does some act whereby he relinquishes dominion over the property, and puts it in the power of the buyer. Shindler v. Houston, 1 Comst. [N. Y.] 266. Examples put in that case as illustrations are, where the key of the warehouse was delivered to the buyer, and where

the bailee of the goods was directed to deliver them according to the contract. Words only do not constitute an actual or symbolical delivery within the meaning of the statute of frauds. The extent of the rule as there laid down is, that there must be some act of the parties superadded to the language of the contract, which amounts to a transfer of the possession of the goods; but the court do not deny that a valid delivery may be made symbolically, in cases where an actual delivery is impossible or impracticable. Undoubtedly a delivery is necessary to give validity to a sale, as against subsequent purchasers or judgment creditors; but it cannot be admitted that in cases where an actual manual occupation of the articles is impossible, as in case of goods or ships at sea, or in case of cumbrous articles, no legal delivery can be made. Such a delivery is legal and sufficient to pass the title, when made in the usual manner, and by the usual symbol, fitted to prevent fraud, and give certainty to the transaction. Valid sale of personal property, as against subsequent purchasers and judgment creditors, is sufficient to take the case out of the operation of the statute of frauds, if it appears that the title becomes absolute in the buyer, and discharged of all liens on the part of the seller. When goods are sold at sea, the indorsement and delivery of the bill of lading to the buyer, and the acceptance of the same by him under the contract, are the proper substitutes for an actual delivery and acceptance of the goods, and have the effect to vest a perfect title in the buyer, discharged of all right of stoppage in transitu, on the part of the seller and indorser of the bill of lading. Newson v. Thornton, 6 East, 41; Pratt v. Parkman, 24 Pick. 42.

The right of stoppage in transitu was conceded to the seller, in order to prevent the injustice which would take place, if in consequence of the vendee's insolvency, while the price of the goods was yet unpaid, they were to be seized and appropriated in satisfaction of his other liabilities, to the prejudice of the rights of his unpaid vendor. The vendor's right in respect of his price is not a mere lien, which he will forfeit if he parts with the possession, but grows out of his original ownership and dominion. Such a right attaches to goods sold on credit, where nothing is agreed on as to the time of delivery. In that state of the case, the vendee is immediately entitled to the possession, and the property and the right of possession vests at once in him; but his right of possession is not absolute, because it is liable to be defeated, if he becomes insolvent before he obtains the absolute control of the goods. Bloxam v. Sanders, 4 Barn. & C. 948; Tooke v. Hollingworth, 5 Term R. 215. Goods may be stopped in transitu so long as the transit continues, whether by land or water, from the consignor to the consignee, and whether they are in the hands of the carrier, ware-

housekeeper, wharfinger, or any other individual connected with the transportation; but the right of stoppage ceases when the goods have reached the place of destination, and have come to the actual or constructive possession of the consignee. Covell v. Hitchcock, 23 Wend. 613; Mottram v. Heyer, 1 Denio, 487; Smith, Merc. Law, 683. Possession actual or constructive defeats the right of stoppage in transitu, and the bill of lading becomes functus officio as soon as the goods are landed and warehoused in the name of the holder, as he then becomes possessed of the goods themselves in the eye of the law, and derives his power, not from the bill of lading, but from such possession. Nothing can be more certain than the rule that, as between the consignor and the consignee on the one side, and third parties on the other, the indorsement and delivery of the bill of lading by the consignee of goods at sea, and the acceptance of the same by the buyer under a contract, made in good faith, defeats the right of stoppage in transitu by the consignor. The settled rule is, that in such cases, where there has been a sale by the consignee which would give a title to the vendee, as against the consignor independently of the indorsement of the bill of lading, the effect of the indorsement would be to take away that right even in cases where it would otherwise exist. Gurney v. Behrend, 3 El. & Bl. 622; Pennell v. Alexander, 3 El. & Bl. 283.

Regarded as consignees, therefore, it is clear that the plaintiffs never had any right of stoppage in transitu, as the terms of the sale were absolute, and the indorsement and delivery of the bill of lading by Morse & Co. were absolute and unconditional. The suggestion may be made that Morse & Co. were only agents of the plaintiffs, and that the latter were in fact the shippers and owners of the coal. Suppose that to be so, and suppose that they are not estopped to deny that the bill of lading expresses their true relation to the goods, still it can make no difference in this case, as the vessel had arrived, and the master had notified the defendants that he was ready to deliver the cargo, and the plaintiffs, two days after, affirmed the sale, and insisted that the defendants were bound by the contract. Rowley v. Bigelow, 12 Pick. 307; Craven v. Ryder, 6 Taunt. 433. Bad faith is not imputed in that case, and the supreme court, speaking to the precise point under consideration, say that, by the well-settled principles of commercial law, the consignee in the bill of lading is constituted the authorized agent of the owner, whoever he may be, to receive the goods, and by his indorsement of the bill of lading to a bona fide purchaser, for a valuable consideration, without notice of any adverse interest, the latter becomes, as against all the world, the owner of the goods. It matters not whether the consignee in such a case be the buyer of the goods or the factor or agent of the own-

er. His transfer in such a case is equally capable of divesting the property of the owner and vesting it in the indorsee of the bill of lading. Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 445. The same court held in Gibson v. Stevens, 8 How. [49 U. S.] 399, that where personal property is, from its character or situation at the time of the sale, incapable of actual delivery, the delivery of the bill of sale or other muniments of title is sufficient to transfer the property and possession to the vendee. Transactions of that character, say the court, if in the usual course of trade, and free from all suspicion of bad faith, have the effect to transfer the legal title and constructive possession of the property to the purchaser; and the court expressly affirms the doctrine that, ships at sea may be transferred to a purchaser by the delivery of a bill of sale, and that goods at sea may be transferred by the indorsement and delivery of the bill of lading. Taney, C. J., adds, that it is hardly necessary to refer to adjudged cases to prove a doctrine so familiar in the courts. Grove v. Brien, 8 How. [49 U. S.] 436.

Actual delivery is a manual transfer of the commodity sold to the vendee, and operates to transfer the title in all cases, unless it be made upon a condition which prevents such a consequence. So a delivery to a common carrier in the usual course of business, is a sufficient delivery to the vendee, but the right of stoppage in transitu remains in the vendor. Stanton v. Eager, 16 Pick. 467. But the bona fide transferee, for value, of a bill of lading indorsed by the consignee of the shipper, takes an absolute title to the goods, free from the equitable right of the unpaid vendor to stop the goods in transitu, as against the purchaser. The obvious reason of the rule is, that by reason of such a transfer of the bill of lading the transitu is regarded as ended, and the right of stoppage therefore is gone. See Story, Sales, 214, 244; Dows v. Greene, 24 N. Y. 641; Dows v. Perrin, 16 N. Y. 325; Gurney v. Behrend, 3 El. & Bl. 622–637. The views of Mr. Browne are, that in order to work an acceptance and receipt of goods purchased, it is not necessary that there should be an actual manual possession of them by the buyer, and he affirms that the statute requires no other act of acceptance and receipt than such as are consistent with the nature, locality, and condition of the goods. The substance of his proposition is, that the statute will be satisfied with symbolical acceptance and receipt of the goods when the case admits of no other delivery, and he expressly states that, in case of a ship or cargo at sea, the delivery and acceptance of the bill of sale or the bill of lading will suffice to perfect the transfer. Browne, St. Frauds, 318; Badlam v. Tucker, 1 Pick. 389; Gardner v. Howland, 2 Pick. 599; Brinley v. Spring, 7 Greenl. [7 Me.] 241. Acceptance and receipt of inaccessible and ponderous or bulky articles may be legal-

ly accomplished, in the view of that commentator, by the performance of any act which shows that the seller has parted with the right and claim to control the property, and that the purchaser has acquired that right. Boynton v. Veazie, 24 Me. 288; Bailey v. Ogden, 3 Johns. 420; Edan v. Dudfield, 1 Adol. & E. (N. S.) 302.

The proposition of the defendants is, where manual possession of the goods is not taken by the buyer, there must be something more than would be sufficient to constitute a delivery and to change the property at common law; and if by that it is only meant that a sale may be valid at common law, as between the parties, and the contract still be within the statute of frauds, the proposition may well be admitted. Subject to that qualification, the proposition is doubtless correct in cases where there is no actual delivery; but if the proposition is understood to include sales by parol contract where there is a delivery, though symbolical, yet sufficient to transfer the property, not only as between the parties, but against the creditors of the seller and subsequent purchasers, and to the exclusion of the right of stoppage in transitu, then the correctness of the proposition cannot be admitted. Possession as matter of law is not in abeyance; it is somewhere, and if not in the seller, it must, in contemplation of law, be in the buyer, and if so, it is clear that the case is not within the statute of frauds. Recent English decisions, it is contended by the defendants, assert a different doctrine, but the cases cited, upon careful scrutiny, do not appear to support any such conclusion. Take, for example, the case of Meredith v. Meigh, 2 El. & Bl. 365, which is the first of the cases referred to as maintaining the proposition. The statement of the case shows that the defendants, at Handley, on the 12th of April, 1850, verbally ordered from the agent of the plaintiff a cargo of china-stone clay, requesting the agent to send it by sea, consigned to certain public carriers at Liverpool, for the defendants, and to be insured by the plaintiff on their account. Plaintiffs resided at Cornwall, and the ordinary mode of transportation was by sea to the Mersey, and thence by inland navigation. Both parties knew that the company named as carriers were engaged in transporting goods from the Mersey to the defendants' place of business. Pursuant to the order, the cargo was sent by a vessel selected by the plaintiff, and on the 18th of April an unsigned copy of the bill of lading was forwarded to the inland carriers, with directions that when they received the bill of lading they should forward the cargo. The shipment was completed the 22d of April, and the bill of lading, duly signed, was sent as directed in the order. On that day the vessel sailed, and on the 26th of the same month she was lost. Notice of shipment was given to the defendants, but they remained silent, and there was no evidence that they ever saw the bill of lading. Held, that a delivery to the master of the vessel selected by the plaintiff was not a delivery to the defendants; and that the silence of the defendants did not alter their situation, as there was nothing in the circumstances which required them to take any action in the premises. Some of the judges thought that the case might have been different if the bill of lading had been received by the defendants themselves, and especially if they had dealt with it, or had in any respect acted as the owners of the goods. Erle, J., said: "I have no doubt that the bill of lading, which is the symbol of property, may be so received and dealt with as to be equivalent to an actual receipt of the property itself; and the court of queen's bench, in the case of Currie v. Anderson, 2 El. & El. 593, subsequently so held, although the bill of lading was made out in the name of the plaintiffs. Adjudged cases may be found which seem to imply that there cannot be such an acceptance and receipt of the goods by the buyer as will take the case out of the statute of frauds, unless he has examined the goods, or done something to preclude him from contending that they do not correspond with the contract, but the converse of that proposition is now well-settled law. Morton v. Tibbett, 15 Adol. & E. (N. S.) 428; Parker v. Wallis, 37 Eng. Law & Eq. 26; Fitzhugh v. Wiman, 5 Seld. [9 N. Y.] 565.

The next case cited by the defendants is that of Bill v. Bament, 9 Mees. & W. 36, which is a case where the sale was for ready money, in which the plaintiff was not bound to deliver until the payment of the price; and inasmuch as there had been no delivery, the court held that there was no evidence to go to the jury to satisfy the statute of frauds. Reference is also made to the case of Norman v. Phillips, 14 Mees. & W. 278, which was a verbal order for timber, directing it to be sent to a railway station, and forwarded to a described place, as had been the practice between the parties in previous dealings. The timber was sent, and arrived at the place of destination, but the defendant, when notified of its arrival, refused to take it. When it arrived it was unaccompanied by any invoice, but one was sent in a few days, which was received by the defendant, and he kept it for a period exceeding a month, and then informed the plaintiff that he declined taking the timber. The verdict was for the plaintiff. A rule to set it aside, and enter a nonsuit was granted, which was made absolute, as the evidence was not sufficient to warrant a verdict. Reliance is also placed upon the case of Farina v. Home, 16 Mees. & W. 119, although its application is not apparent. Plaintiff shipped goods upon the verbal order of the defendant to his own agent, who stored them, and indorsed the warehouseman's receipt to the defendant, who kept it for some months, but denied that he had ordered the goods, and refused to

pay the charges on them. Held, that there was no delivery, the warehouseman's possession being considered to be that of the consignee, notwithstanding the indorsement of the receipt, until the warehouseman attorned to the vendee. Comment need not be made upon adjudged cases where it appears that the goods remained in the possession of the vendor, as it is evident that they do not support the proposition of the defendants in this case. Castle v. Sworder, 5 Hurl. & N. 281. Certain other cases are also referred to, which decide that a delivery of goods ordered to a carrier, without more, is not such a delivery to the buyer as will take the contract out of the operation of the statute of frauds, which is doubtless correct, as in that state of the case there is no acceptance of the goods, actual or symbolical, and they are still subject to the right of stoppage in transitu by the seller, and every objection as to quality or quantity by the buyer. Coombs v. Bristol & E. R. Co., 3 Hurl. & N. 510; Outwater v. Dodge, 6 Wend. 400; Howard v. Borden, 13 Allen, 300. Decided cases, where it appears not only that the defendant did not accept the goods sent under an order, but that he refused to do so, need no comment; and if it appears that he merely examined the goods to ascertain their quality or quantity, it cannot make any difference, as in such case there is no evidence of acceptance. Kent v. Huskinson, 3 Bos. & P. 233.

When goods are in custody of a third person, an order for delivery with notice to that person is sufficient to pass the property, even as against the attaching creditors of the vendor. Tuxworth v. Moore, 9 Pick. 347; Carter v. Willard, 19 Pick. 1; Burge v. Cone, 6 Allen, 412; Boardman v. Spooner, 13 Allen, 357; Whitaker v. Sumner, 20 Pick. 405. Assent by the party, however, in whose custody the goods are, it is said, is necessary to constitute acceptance and receipt under the statute of frauds; but if the parties agree that he shall, as between them, be considered the bailee of the buyer, it is not perceived how the acts of the bailee can defeat the sale. Bentall v. Burn, 3 Barn. & C. 423; Farina v. Home, 16 Mees. & W. 119. Textwriters agree that a mere delivery of a bill of lading is not enough without a distinct acceptance of the same by the purchaser; but anything amounts to a delivery and acceptance, says Parsons, which was intended to be so, and received as such, and which actually put the goods within the reach and power of the buyer; and, among the cases enumerated by the author, where symbolical delivery is sufficient, is that of the indorsement and delivery of a bill of lading. Pars. Merc. Law, 75. Most recent text-writers in England also maintain the same views, and there is no decision to the contrary. Macl. Shipp. 341; Maude & P. Shipp. 143; Chitty, C. & M. 403; Lickbarrow v. Mason, 6 East, 20. The argument of the defendants is, that there is no difference between the case at bar and an ordinary order; but it is not possible to adopt that suggestion, as a different rule prevailed for a century before the Revolution. "The consignee of a bill of lading," said Holt, C. J., "has such a property that he may assign it over." Evans v. Martlett, 1 Ld. Raym. 271. If the goods are bona fide sold by the factor at sea (as they may be, where no delivery can be made), the sale, said Lord Mansfield, will be good, and the vendee shall hold them by virtue of the bill of sale, though no actual possession is delivered. Wright v. Campbell, 4 Burrows, 2046; Davis v. Bradley, 28 Vt. 121. Indorsement and delivery of a bill of lading passes no title if the instrument was stolen, or if the consignor was not the owner of the goods; but if the assignment was bona fide at the transfer, delivery and acceptance of this symbol will transfer everything which it represents. Newsom v. Thornton, 6 East, 19. Acceptance in such a case is the acceptance of the goods, and has the effect to take the case out of the operation of the statute of frauds, and vests the absolute dominion of the goods in the buyer, and the right of stoppage in transitu ceases from that moment. Dows v. Greene, 24 N. Y. 642.

Even suppose it were otherwise, still the plaintiff would be entitled to judgment in this case, in view of the special circumstances set forth in the statement. Delivery of the bill of lading, together with the bill of the coal, was made at the date of the contract. The subsequent conduct of the defendants clearly shows that they regarded the transfer of the property as complete, as they offered to pay the plaintiff one dollar per ton to take it back, and release them from the contract. Although the plaintiff refused to do as requested, still the defendants retained the bill of lading and the bill of parcels, without any intimation that they should not receive the cargo. They substantially repeated the request after the vessel arrived, and the same being again refused, they still retained the instruments of title, until the 1st of April, when they were returned as described in the statement. Due notice was given of the time of the sale of the cargo, and it was properly sold, as is required in such cases. Plaintiff is entitled to judgment.

AUDLEY, THE STRATTON. See Case No. 13,529.

AUGUR, (DIBBLE v.) See Case No. 3,879.

AUGUST, Ex parte. See Case No. 12,979.