## AUGUST MOHR & another *vs.* BOSTON & ALBANY RAILROAD COMPANY.

A. sold to B. in Boston whiskey then in a government bonded warehouse in Indiana, and B. gave his acceptances for the price. The government storekeeper gave his certificate for the whiskey as the property of B.; and this certificate was sent by A. to B. It was part of the terms of sale, that A. should from time to time, as B. should request, ship the whiskey to Boston, and pay the storehouse charges, taxes and insurance, drawing on B. for the amounts. A. having shipped most of the whiskey to B. in this manner, and having received an order to ship the remaining barrels, the warehouseman, by A.'s direction, as had been the practice with the previous shipments, caused the whiskey to be regauged in order to ascertain the taxes due, paid the taxes, and drew on A. for the amount so paid and the warehouse charges. The whiskey could not be taken out of the warehouse until it was thus regauged and the taxes paid. A., together with the bill of lading, sent the bill of the warehouseman to B., drawing on him for the amount thereof. The barrels were delivered to a railroad company for transportation to B. at Boston. While they were in the hands of the company, B. became insolvent. *Held*, that A.'s right of stoppage *in transitu* was not lost.

REPLEVIN of fifty barrels of whiskey by plaintiffs doing business in Cincinnati under the name of Mohr, Solomon & Mohr. Trial in the superior court, before *Rockwell*, J., who allowed a bill of exceptions of which the material parts were as follows:

" The plaintiffs, being the owners of a lot of 250 barrels of whiskey, then stored in a United States government warehouse connected with the distillery of McGregor & Company in Terre Haute, Indiana, and insured by McGregor & Company in the name of the plaintiffs, about October 1, 1868, sold the whiskey, through their agent in Boston, to Edward Dewey, a merchant of that city, at $1.25 per gallon, in bond, upon a credit of four months, and caused the same to be inspected and gauged by the United States gauger. On October 3 they wrote Dewey a letter, inclosing the certificates of the gauger and storekeeper." The storekeeper certified that the whiskey was in the warehouse,

" Mr. Edward Dewey, of Boston, Mass., being the owner of said whiskey as per Messrs. Mohr, Solomon & Mohr's order." Dewey accepted three drafts drawn by the plaintiffs for the amount of the purchase money, based upon the gauger's certificate ; the first two were paid ; the last, which matured February 16, 1869, was not paid.

" It was a part of the terms of the sale that the plaintiffs should from time to time, as Dewey should request, ship the goods to Boston from the bonded warehouse, and pay the storehouse charges, taxes, stamps and insurance, drawing on Dewey at ten days' sight for the amounts so paid. In pursuance of this arrangement, Dewey, at four different times prior to February 1869, wrote to the plaintiffs, asking them at each time to ship fifty barrels of the whiskey to Boston. The plaintiffs thereupon wrote to McGregor & Company, directing them to ship the same. On receipt of their orders, the whiskey was regauged at the warehouse for the purpose of ascertaining the amounts of taxes to be paid ; the same, as also the United States stamps, were paid by McGregor & Company, who drew on the plaintiffs at sight for the amounts thus paid and for the storehouse charges, and sent a bill of the same to the plaintiffs, who paid the drafts and wrote to Dewey, inclosing McGregor & Company's bill and the bills of lading for the merchandise, and advising him that they had drawn at ten days' sight, and so drawing for the amounts paid by them. The insurance premiums were paid on the entire lot by the plaintiffs and repaid to them by Dewey, but the policies continued in the plaintiffs' names and were not transferred to him. The plaintiffs wrote to him asking if that should be done, to which he replied directing them not to make the transfer.

" In February 1869, the plaintiffs, in accordance with the practice, having received an order to ship the remaining fifty barrels about February 1, directed McGregor & Company to ship the same to Dewey at Boston. McGregor & Company thereupon had the whiskey regauged, paid the taxes and stamps, and drew on the plaintiffs at sight for this and for storehouse charges, sending to the plaintiffs a bill of the same, which draft was paid. The plaintiffs thereupon wrote to Dewey, inclosing McGregor & Com-

pany's bill, and the bill of lading for the fifty barrels, and advising him that they had drawn on him at ten days' sight, and so drawing for the amounts paid by them. This draft, which matured February 25, 1869, was not paid. The bills sent by McGregor & Company to the plaintiffs, for taxes, &c., were all in the same form and made to the plaintiffs as debtors to McGregor & Company. The United States bonded warehouse was under the charge and control of a United States government officer, and the whiskey could not be taken out of it unless it was first regauged and the taxes paid.

" Dewey failed on February 16. The goods arrived at the Boston depot of the defendants' railroad, on their way from Terre Haute, Indiana, on the afternoon of the same day, and on February 17, while still at the depot, were taken on this writ, by an officer who paid the defendants' bill for freight.

" Upon these facts, the defendants requested the judge to rule that the plaintiffs could not maintain their action ; but the judge refused so to rule, and directed the jury to return a verdict for the plaintiffs, with nominal damages," which was returned, and the defendants alleged exceptions.

*R. M. Morse, Jr., & C. P. Greenough*, for the defendants, cited *Orr* v. *Murdock*, 2 Irish Com. Law, 9 ; *Mottram* v. *Heyer*, 5 Denio, 629 ; *Hammond* v. *Anderson*, 4 B. & P. 69 ; *Cartwright* v. *Wilmerding*, 24 N. Y. 521 ; *Arnold* v. *Delano*, 4 Cush. 33, 39 ; *Harman* v. *Anderson*, 2 Camp. 243 ; *Swanwick* v. *Sothern*, 9 Ad. & El. 895 ; Story on Sales, §§ 337 *a*, 340, 341 ; Houston on Stoppage in Transitu, 18, 81, 128 ; Lawes on Charter Parties, 503.

*J. D. Ball*, for the plaintiffs, besides the cases cited in the opinion, referred to *Northey* v. *Field*, 2 Esp. 613 ; *Morley* v. *Hay*, 3 Man. & Ryl. 396 ; *Nicholls* v. *Le Feuvre*, 2 Bing. N. C. 81, 86 ; *Jackson* v. *Nichol*, 5 Bing. N. C. 508 ; *Hanson* v. *Meyer*, 6 East, 614, 627 ; *Wallace* v. *Breeds*, 13 East, 522 ; *Owenson* v. *Morse*, 7 T. R. 64 ; *Hodgson* v. *Loy*, Ib. 440 ; *Feise* v. *Wray*, 3 East, 93 ; *Edwards* v. *Brewer*, 2 M. & W. 375 ; *Tanner* v. *Scovell*, 14 M. & W. 28 ; *Townley* v. *Crump*, 4 Ad. & El. 58, 60 ; *McEwan* v. *Smith*, 2 H. L. Cas. 309 ; *Tucker* v. *Humphrey*, 4 Bing. 516 .

*Kymer* v. *Suwercropp*, 1 Camp. 109; *Burnham* v. *Winsor*, 5 Law Reporter, 507; *Naylor* v. *Dennie*, 8 Pick. 198; *Haskell* v. *Rice*, 11 Gray, 240; *Buckley* v, *Furniss*, 17 Wend. 504; *Covell* v. *Hitchcock*, 23 Wend. 611; *Mottram* v. *Heyer*, 5 Denio, 629; *Harris* v. *Pratt*, 17 N. Y. 249; *Donath* v. *Broomhead*, 7 Penn. State, 301; 2 Kent Com. (6th ed.) 541, 544, 546, 547.

MORTON, J.* This is an action of replevin to recover fifty barrels of whiskey in the hands of the defendants as common carriers. The plaintiffs' right to maintain the action depends upon the question whether they had the right to stop the goods *in transitu*, as between them and Dewey, the vendee and consignee of the goods. The rule is generally stated to be that the vendor's right of stoppage *in transitu* continues until the goods have reached their ultimate destination and come into the actual possession of the vendee. *Stubbs* v. *Lund*, 7 Mass. 453. *Stanton* v. *Eager*, 16 Pick. 467. *Arnold* v. *Delano*, 4 Cush. 33. *Grout* v. *Hill*, 4 Gray, 361. While the goods are in the hands of a carrier or warehouseman, on their way to the vendee, the vendor, in case of the insolvency of the vendee, has the right to stop them and assert his lien for the price. The question in this case is, whether the whiskey in question had, before the plaintiffs brought their suit, reached its destination and come into the possession of the vendee within the meaning of this rule of law. The whiskey was part of a lot of 250 barrels which Dewey purchased of the plaintiffs in October 1868. At the time of the sale, the whiskey was in bond in a United States government warehouse in Terre Haute, Indiana, insured in the name of the plaintiffs and belonging to them. The sale was made in Boston, Dewey being a merchant of that city, and the destination of the goods contemplated and provided for in the contract was Boston. The bill of exceptions states that "it was a part of the terms of the sale that the plaintiffs should from time to time, as Dewey should request, ship the goods to Boston from the bonded warehouse, and pay the storehouse charges, taxes, stamps and insurance, drawing on Dewey at ten days' sight for the amounts so paid." In pursuance of this arrangement, the plaintiffs at four different times prior to February 1869, at the request of Dewey, shipped lots of fifty bar-

* COLT, J., did not sit in this case.

rels each to Boston, and in February 1869, at the request of Dewey, shipped to Boston the remaining fifty barrels, being the lot in controversy in this suit. It is clear that the destination provided for in the contract of sale was Boston; and we are of opinion that the goods, while in the government warehouse, must be deemed to be in the hands of an intermediate agent, on their way to the vendee.

If the transaction had been simply a sale of these fifty barrels, one of the terms being that the vendors should forward them to Boston within a time specified, or within a reasonable time, and they had forwarded them accordingly, it seems too clear to admit of doubt, that the vendors' right of stoppage *in transitu* would exist and continue until the goods reached their destination.

The principle is, that the *transitus* is not at an end until the goods have reached the place contemplated by the contract between the buyer and seller as the place of their destination. *Coates* v. *Railton*, 6 B. & C. 422. *Winks* v. *Hassall*, 9 B. & C. 332. Thus it has been held that goods shipped in the vendee's own ship were not at the end of the transit until they reached the place of destination, if the contract contemplated that they were to be sent forward. *Newhall* v. *Vargas*, 13 Maine, 93.

In the case at bar, something remained to be done by the vendors, under the contract of sale, before the goods would come into the possession of the vendee at the place of destination. The contract contemplated that they were to forward them to Boston. If the goods had been and remained in their actual possession, as vendors, until they forwarded them on the order of Dewey, their right of stoppage *in transitu* would have been unquestionable. *Arnold* v. *Delano*, 4 Cush. 33. The result is the same though they remained stored in a government warehouse, unless the transfer to Dewey upon the records at the warehouse is to be treated as the termination of the transit. But, as we have seen, the terms of the sale provided that the plaintiffs should forward the goods to Boston as their place of destination, and the storage in the warehouse was preliminary to their transit, and not the termination of it. It is no answer to this view, to say that there was a constructive delivery of the whiskey to Dewey which

vested the property in him, and that he had the right to take possession of it and withdraw it from the warehouse. In all cases of delivery of goods to a common carrier for the purpose of transit, the vendee, acting in good faith, has the right to intercept the goods before they reach their destination, and, by taking actual possession of them, to defeat the vendor's lien. But unless he does so, the lien continues till they reach the end of the transit. Dewey did not take possession of these goods at the warehouse, but left them, to be forwarded by the plaintiffs under the contract. We are of opinion, upon the facts of this case, that when the plaintiffs obtained possession of the whiskey in question by their writ of replevin it was *in transitu*, and they had a right to stop it for the purpose of enforcing their equitable lien for the price.                                              *Exceptions overruled.*