## HALFF, WEISS & CO. v. CHAS. H. ALLYN & CO.

(Case No. 1400.)

1. GOODS IN TRANSITU.— Goods, when shipped, are deemed to be *in transitu*, not only while in the actual possession of the carrier, whether on land or water, though the carrier may have been appointed by the consignee, but also while they remain in any place of deposit connected with their transmission and delivery, and until they arrive in the actual or constructive possession of the consignee at the place named by the buyer to the seller as their place of destination. Following Chandler *v.* Fulton, 10 Tex., 1, and Covell *v.* Hitchcock, 23 Wend., 613.

2. GOODS IN TRANSITU — EVIDENCE.— A bill of lading for goods to a railroad depot, the shipping point for a neighboring town for which they were destined, cannot determine that depot as the destination contemplated between the buyer and seller. Were it otherwise, the legal effect of the bill of lading would be for the court and not the jury.

3. GOODS IN TRANSITU.— The fact that goods are received at the nearest railway depot to their place of destination, by one who exhibited the bills of lading to the carrier, and had an order for their delivery from the purchaser, does not of itself determine the fact that on their delivery, on the order, they ceased to be *in transitu*, in the absence of evidence showing the purpose for which the order for their delivery was given. Chandler *v.* Fulton, 10 Tex., 1, cited and approved.

4. CHARGE OF COURT.— See opinion for a charge in regard to goods *in transitu* held to be erroneous, in holding that the transit of goods ceased on their delivery to an agent of the purchaser, when the jury should have been told that the goods were still *in transitu* if they were only received by the agent to be forwarded to their original destination.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

Suit for trial of right of property under the statute. The appellants claimed the right of stoppage *in transitu* of goods, and asserted their right by filing the claimant's oath and bond.

Issues were made up under the direction of the court and filed. The cause was tried before a jury, and resulted in a verdict for the plaintiffs; judgment thereon.

The goods in controversy were sold by Halff, Weiss & Co. to E. M. Ewing on a credit of six months, and shipped from Galveston August 26, 1881, and addressed to "E. M. Ewing, Blooming Grove, Texas, care Railroad Agent, Corsicana." The goods arrived at Corsicana on the 6th of September, 1881, and were taken out by A. Fox & Bro. from the railroad depot on September 7, 1881, and by them stored in the back room of their store. On the 8th of September, 1881, the goods were attached by the Corsicana creditors of E. M. Ewing, in the following order: 1st, by A. Fox & Bro.; 2d, by

C. H. Allyn & Co., and 3d, by Sullivan. At the time E. M. Ewing was hopelessly insolvent.

Other facts appear in the opinion.

*Davis & Sayles*, for appellants, cited: Parsons' Ship. and Ad., vol. 1, p. 501; Buckley *v.* Furniss, 15 Wend., 146; Covell *v.* Hitchcock, 23 Wend., 611; Cabeen *v.* Campbell, 30 Pa. St., 254; Calahan *v.* Babcock, 21 Ohio St., 281; Harris *v.* Pratt, 17 N. Y., 249; House *v.* Judson, 4 Denio, 7; Chandler *v.* Fulton, 10 Tex., 16–22; Loeb *v.* Peters, 63 Ala., 243.

. *J. D. Lee* and *R. S. Neblett*, for appellee, cited: Holbrook *v.* Vose, 4 Am. Law Reg., 602; Benj. on Sales, sec. 867; Story on Sales, sec. 320; Stanton *v.* Eager, 16 Pick., 467; Atkins *v.* Colby, 20 N. H., 154; Blum *v.* Marks, 21 La. Ann., 268; Benedict *v.* Schaettle, 12 Ohio St., 515; Reynolds *v.* Boston, etc., R. R. Co., 43 N. H., 580; Dickman *v.* Williams, 50 Miss., 500; Newhall *v.* Vargas, 13 Me., 93; S. C., 15 Me., 314; 29 Am. Dec., 385, note; 1 Smith's Leading Cases, 1177; Gwyn *v.* R. & D. R. R. Co., 85 N. C., 429; S. C., 39 Am. Rep., 709; Morris *v.* Shryock & Rowland, C. L. J., vol. 2, p. 235; People *v.* Haynes, 28 Am. Dec., 541; Gillian *v.* Henderson, 12 Tex., 47; Wright *v.* Henderson, 12 Tex., 44; Wootton *v.* Wheeler, 22 Tex., 338; Belt *v.* Raguet, 27 Tex., 471; Tex. Law Rep., October, 1882, pp. 474–5.

STAYTON, ASSOCIATE JUSTICE.— The bill of lading upon which the goods were shipped does not appear in the transcript, but the evidence clearly shows that the goods were sold by the vendors at Galveston and shipped to E. M. Ewing, the vendee, marked and addressed to "E. M. Ewing, Blooming Grove, Texas, care of Railroad Agent, Corsicana," and that "Blooming Grove," distant about eighteen miles from Corsicana, was the place of business of Ewing. It further appears that they were so shipped upon the order of Ewing.

"Goods are deemed to be *in transitu*, not only while they remain in the possession of the carrier, whether by land or water, although such carrier may have been named and appointed by the consignee, but also when they are in any place of deposit, connected with the transmission and delivery of them, and until they arrive at the actual or constructive possession of the consignee at the place named, by the buyer to the seller, as their destination." Abbott on Shipping, 520, 521; Chandler *v.* Fulton, 10 Tex., 13.

In the case of Coates *v.* Railton, 6 Barn. & Cress., 427, the rule

was thus stated, after reviewing cases: "The principle to be deduced from these cases is that the *transitus* is not at an end until the goods have reached the place named by the buyer to the seller as the place of their destination."

The same rule has been recognized in the following American cases: Covell *v.* Hitchcock, 23 Wend., 613; Cabeen *et al. v.* Campbell *et al.*, 6 Casey, 259; Hays *et al. v.* Monille & Co., 2 Harris, 53; Buckley *v.* Furniss, 15 Wend., 147; Mohr *v.* B. & A. R. R. Co., 106 Mass., 71; Secomb, etc., *v.* Nutt, etc., 14 B. Mon., 327; Wood & Oliver *v.* Yeatman, 15 B. Mon., 279; as it is by Mr. Benjamin in his work on Sales, sec. 848.

For the purpose of showing what the ultimate destination of the goods was, the railroad agent at Corsicana, having shown what purported to be a copy of the bill of lading, over the objection of the appellants, was permitted to state that the ultimate destination was Corsicana.

This action of the court was erroneous; for the fact that the bill of lading only secured the transportation of the goods to Corsicana, which was probably the nearest point on the railway to Ewing's place of business, and the point to which goods were usually sent to him by rail, could not make that the destination of the goods contemplated between the buyer and seller; and besides, if the bill of lading given by the railway could be looked to as conclusively fixing the destination which would end the transit, its legal effect was for the determination of the court, and not matter proper to be submitted to the opinion of a witness.

The rule as to the place of destination which ordinarily ends the transit is as before stated, and in this case, under the facts contained in the record, "Blooming Grove" must be held to have been the place of destination; but while this is true, it is well settled that a vendee acting in good faith has the right to intercept the goods before they reach their destination, and by taking possession of them defeat the vendor's lien or right to repossess himself of the property.

In this case it appears that when the goods reached Corsicana they were delivered by the freight agent of the railway company to A. Fox & Bro., who presented bills of lading for all the goods shipped to Ewing and then in the hands of the railway company except six or seven cases. There seem to have been at that time about twenty cases of goods in the hands of the railway for Ewing, of which some contained the goods sold by Halff, Weiss & Co. to him.

The bills of lading presented by Fox & Bro. to the agent seem not to have been indorsed, nor does it appear that Fox & Bro. presented to the agent any order from Ewing for the packages. On the trial an order from Ewing to Fox & Bro. was placed in the hands of a witness, which he testified was in the genuine handwriting of Ewing. This order bore date September 2, 1881, was addressed to A. Fox & Bro., and requested them to get Ewing's goods from the depot, and hold the same subject to his order. It was shown that the order had been in the possession of A. Fox & Bro., and that by them it was handed to the attorney for plaintiffs during the trial. It was not shown when that order came into the hands of Fox & Bro., nor that they acted upon it in receiving the goods. The goods were sold in Galveston on the 26th of August, and shipped on the same day, and were to be paid for in six months. They arrived in Corsicana on the 6th September; on the 7th they were received by Fox & Bro., and stored in their house, and on the 8th they were seized by Fox & Bro., under an attachment against Ewing, while the goods were still in their house, after which the attachment in favor of the plaintiffs against Ewing, and also another in favor of Sullivan & Co., were levied upon the same goods. It is shown that Ewing was insolvent, and that he was a merchant doing business at " Blooming Grove" for some time before August 26, 1881, during which time Fox & Bro. and Allyn & Co., although not receiving and forwarding merchants, had frequently received from the railway company goods for him, and had stored them in their respective houses until such time as Ewing should send an order and his own wagon for them or order them sent in some other manner.

The important question arising under this state of facts was, had the goods been so received at Corsicana by Fox & Bro. for Ewing as to terminate the transit and with it the right of stoppage *in transitu?*

Ewing had not actually received the goods and ended the transit originally contemplated by the sellers and himself by changing their destination to some other point than "Blooming Grove."

The delivery to Fox & Bro. was but a constructive delivery to Ewing, and under the facts in evidence the inquiry arose, whether their receipt of the goods was under Ewing's directions, for the purpose of aiding in their transmission to "Blooming Grove," or for the purpose of giving to them a new destination, which might be Corsicana.

The record upon this subject, if we give it the most favorable construction admissible for the appellees, and assume that they received

the goods under the letter from Ewing to them directing them to receive the goods and hold them subject to his order, but shows that their authority for receiving them was the letter, and does not tend to show that the purpose of Ewing was to change the place of destination originally contemplated by the sellers and buyer.

The intention of Fox & Bro. in this respect could have no bearing upon the question, unless it was the result of instructions received by them from Ewing. The fact that the goods went into the possession of agents named by the vendee cannot control the question, which is: for what purpose did the goods go into their possession?

The true rule is believed to be that stated by Chancellor Kent, and adopted by this court in Chandler v. Fulton, 10 Tex., 14, as follows: "The cases, in general, on the subject of constructive delivery may be reconciled by the distinction, that if a delivery to a carrier or agent of the vendee be for the purpose of conveyance to the vendee, the right of stoppage continues, notwithstanding such a delivery to the vendee; but if the goods be delivered to a carrier or agent for safe custody, or for disposal on the part of a vendee, and the middleman is, by the agreement, converted into a special agent for the buyer, the transit of the goods terminates, and with it the right of stoppage."

To the same effect are the following cases: Coates v. Railton, 6 B. & C., 425; Mohr v. B. & A. R. R. Co., 106 Mass., 71; Buckley v. Furniss, 15 Wend., 141; Harris v. Pratt, 17 N. Y., 252; Covell v. Hitchcock, 23 Wend., 612; Cabeen v. Campbell, 6 Casey, 259; Hays v. Monille, 2 Harris, 48; Secomb v. Nutt, 14 B. Mon., 324. Many of the English cases bearing upon the question are not accessible to us here.

The importance of presenting to the jury the question as to whether or not Fox & Bro. held the goods for the purpose of furthering their transportation to "Blooming Grove" was increased by the fact that, prior to the time they received the goods in question, they had frequently received other goods for Ewing, for no other purpose than to aid in the transportation of them to "Blooming Grove" upon the order and by such conveyance as Ewing should direct.

The court instructed the jury as follows: "Goods or other personal property are held and considered to be *in transitu* from the time they are shipped by the vendor from the point of shipment until they arrive at the place of their ultimate destination, or until they are received at some intermediate point by the vendee or pur-

chaser, or by some one authorized by him as his agent to receive them for him; and the vendor of goods has the right, in the event of the insolvency of the vendee, to stop and take possession of the goods while *in transitu*, that is, at any time prior to their arrival at their destination, or of their being received by the vendee or by his authorized agent for him." ⁘ . . "If, however, you believe, from the evidence, that the goods were received by the said Ewing at Corsicana, or were delivered to the said A. Fox & Bro. upon the order and by the direction of the said Ewing, and that said Fox & Bro. held the goods subject to the order of the said Ewing, and as his agent solely, and not as the agent of claimants, or of the claimants and the said Ewing together, you are instructed that this would be a delivery to Ewing and would end the transit."

This charge, while in the main correct, was not only defective but was erroneous, in that it informed the jury, if Fox & Bro. held the goods solely for Ewing as agent, then the transit had ceased, and this without reference to the purpose for which they held the goods as agent for Ewing, when the jury should have been instructed that, if the purpose for which they received and held the goods, even as agent for Ewing, was to forward them to their original destination, then the transit was not ended, so long as they held the goods for that purpose.

The levy of the attachment for their benefit could not change the character of their holding, for in reference thereto the intention of the vendee was in no manner, so far as is shown by the record, influential, and without this, to give character to the holding of the agent, the intention of the agent was unimportant.

The first and fifth instructions asked by the appellants, which were refused by the court, presented substantially the law of the case, and with perhaps slight modifications should have been given, or their substance in some way incorporated in the charge given by the court.

As the case is presented it is not necessary to consider the other assignments of error.

In reply to the position assumed by the appellees, we deem it proper to say that the appellants were entitled to prosecute the remedy selected by them, or that they might have resorted to any other action in its nature possessory.   Hutchinson on Carriers, 409.

For the errors indicated the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 2, 1883.]