## 8694

### MONAGHAN MILLS v. GILREATH MFG. CO.

CARRIER—STOPPAGE IN TRANSITU.—A manufacturer of cloths, selling on credit to a manufacturer of clothing, has the right of stoppage in transitu as to goods delivered by the seller to a bleaching company to be bleached on account of the buyer, while in the possession of the bleaching company, notice being given of the exercise of such right immediately upon information of insolvency of the buyer.

Before DeVore, J., Greenville, December, 1912. Modified.

Action by Monaghan Mills *et al.* against Gilreath Mfg. Co. *et al.* F. W. Poe Mfg. Co., Brandon Mills, of the plaintiffs, and the receiver of the defendants appeal.

## MASTER'S REPORT.

So much of the report of the master as seems pertinent to the issues is:

"On March 8, 1912, the receiver presented his certain petition to the Court in which he alleged that he found in the hands of the Union Bleaching and Finishing Company a large quantity of goods which had been sold to and were held upon account of Gilreath Manufacturing Company, but which were claimed by various manufacturers upon the ground that said goods had never been delivered to Gilreath Manufacturing Company, but were held by the Union Bleaching and Finishing Company subject to the order of said parties or were subject to liens for purchase price; these parties were (1) Osceola Commission Company; (2) Alice Mills; (3) F. W. Poe Manufacturing Company; that the goods so held were needed for the purpose of filling outstanding orders taken by Gilreath Manufacturing Company; and asking that he be allowed to withdraw said goods from the Union Bleaching and Finishing Company, the claim of said parties to be transferred to the manufactured product and proceeds of sale which should be kept separate.

"On the 6th day of February, 1912, and the 11th of March, 1912, orders were signed by Hon. Judge Memminger, with consent of all the above parties, including also Lois Cotton Mills and Brandon Mills, who made similar claims, conformable with the prayer of said petition.

"Under said order the receiver withdrew from the Union Bleaching and Finishing Company goods to the invoice value as follows: * * *

"On July 5, 1912, an order was signed by Judge Prince modifying the previous orders and permitting F. W. Poe Manufacturing Company to sell the goods referred to in the petition which had not been delivered to the receiver under the said orders, he having suspended manufacturing; the proceeds of sale to be kept separate by the said F. W. Poe Manufacturing Company subject to the order of the Court, the proceeds standing in the place instead of the goods themselves and to be held subject to the rights of the receiver and Union Bleaching and Finishing Company as they should be established in this cause.

"Under this order the F. W. Poe Manufacturing Company resumed possession of all the goods delivered to the Union Bleaching and Finishing Company, except the quantity delivered to the receiver above stated.

"The following simple claims filed with and proved before me in due time, about which there is no controversy, I report as correct and entitled to share *pro rata* in the distribution of the assets : * * *

"The storm center of the litigation, however, is in the claims of the Osceola Commission Company, Alice Mills, F. W. Poe Manufacturing Company, Lois Cotton Mills, and Brandon Mills, each of whom claims the right of a preferred creditor by reason of having exercised the right of stoppage *in transitu* after the corporation became insolvent and before the goods sold by them reached the actual possession of the Gilreath Manufacturing Company.

"The testimony in this case is voluminous, and the argument of counsel is able and elaborate. After a careful review of the testimony and rigid analysis of argument of counsel, the master is of the opinion that the controlling question of fact in this case is that of delivery.

"If the manufacturing companies delivered to the Gilreath Manufacturing Company the goods sold them, the proceeding to stop them *in transitu* cannot be maintained.

"If, however, these goods did not reach the actual possession of the Gilreath Manufacturing Company, then the proceeding to stop *in transitu* will prevail

*As to the Contention of F. W. Poe Mfg. Co.*

"This company presents practically three claims, which I shall refer to as claim A, claim B, and claim C, respectively.

"Claim A is for goods which were sold to Gilreath Manufacturing Company, in the sum of twelve thousand one hundred and thirty-four and 02-100 ($12,134.02) dollars. Invoices for these goods were rendered to Gilreath Manufacturing Company and, under the terms of sale, Poe Manufacturing Company sent the goods by wagon to the Union Bleaching and Finishing Company for account of Gilreath Manufacturing Company. The bleachery received them as the goods of the Gilreath Manufacturing Company, so entered them upon their books, bleached and finished the goods according to the directions of the Gilreath Manufacturing Company; held them subject to its order, and shipped out some of the goods on the order of the Gilreath Manufacturing Company. This was the situation when it was learned that Gilreath Manufacturing Company was in embarrassed circumstances. Thereupon, Poe Manufacturing Company wrote a letter seeking to rescind the sale and directing the bleachery not to deliver the goods.

"Claim B is for goods sold by Poe Manufacturing Company to Gilreath Manufacturing Company and invoices rendered to the Gilreath Manufacturing Company showing the cases, numbers, and prices, etc. These goods were in the hands of the bleachery, which had finished them for account of Poe Manufacturing Company. The bleachery had not been advised as to the sale of these goods to Gilreath Manufacturing Company, and no order on the bleachery given for delivery. These goods were represented by two bills, one for $1,076.70 and the other for $1,075.76.

"Claim C is for goods which were sold by Poe Manufacturing Company to Gilreath Manufacturing Company in the sum of $906.61, and invoices rendered to the latter company showing goods, prices, etc. These goods were at the time of the sale in the hands of the Poe Manufacturing Company where they remained until the receivership.

"Poe Manufacturing Company claims the title to all these goods, and the right of stoppage *in transitu,* on the ground that the goods had never reached the actual possession of the defendant corporation, before this right was invoked.

"Each invoice showed that the sale was on credit, and I find as further facts, that the Gilreath Manufacturing Company has never paid for the goods, and was insolvent about the first day of January, 1912.

"As to goods under claim A, the agreement was that these goods should be delivered by Poe Manufacturing Company to the bleachery where they were to be bleached and finished under the directions of the Gilreath Manufacturing Company, the charges for this work being directly against the Gilreath Manufacturing Company. Delivery was complete then, so far as Poe Manufacturing Company and Gilreath Manufacturing Company are concerned when the goods were delivered and received by the bleachery for account of the Gilreath Manufacturing Company. Thereafter, Poe Manufacturing Company has no control over these goods. The testimony is clear on this point. Poe Manufacturing Company never attempted to exercise any control over them and no control on their part was recognized. While in the hands of the bleachery, these goods were to undergo very substantial change. They were to be taken out of the original packages, bleached and finished, and repacked for the uses of the Gilreath Manufacturing Company. If in a sale of personal property delivery to a third person at the request of the purchaser is ever to be accounted delivery to the purchaser, I think that this is that

case. When the goods went into the hands of the bleachery and their very nature changed under direction of Gilreath Manufacturing Company after the goods had been held for account of that company. Poe Manufacturing Company had absolutely no power or control over the goods, while Gilreath Manufacturing Company did have absolute ownership and power of disposition of the goods.

" 'Goods are delivered when they are placed in the buyer's power so that he may immediately remove them and cannot rightfully be prevented from so doing.' Smith's Mer. Law, sec. 599.

" 'The delivery of an article sold to a person appointed by the vendee to receive it, is a delivery to the vendee.

" 'Delivery to a warehouseman or third person as bailee for the purchaser by the consent or direction of the purchaser, is sufficient delivery to the purchaser.' 24 A. & En. of Law, 1072.

" 'Actual delivery will be deemed made whenever the goods go into the hands of the warehouseman who has express or implied authority from the vendee to receive and hold them as his agent, and who does so receive and hold them.

" 'Where a warehouseman receives the goods at their destination, not merely as a middle man but as the buyer's agent, the delivery is final and the right of stoppage is cut off.' 28 A. & En. of Law, 1107.

"Actual delivery to the agent of the consignee or to one who the consignee has directed delivery to be made for him puts an end to the right of stoppage by the vendor.

" 'The right of the stoppage *in transitu* is extinguished only by actual and complete delivery of the goods consigned to the vendee or to some agent of and for him.' *Callahan v. Babcock,* 8 Am. Rep. 63.

" 'If the purchaser gives orders that the goods should be sent to a particular place, there to be kept until he gives

fresh orders as to their destination to a new carrier; the original transit is at an end when they have reached that place and any further transit is a fresh and independent transit.' *Bethel* v. *Clark,* 20 QBD. 615; Williston on Sales 616.

" 'The destination may be fixed by the contract of sale or by directions given by the purchaser to the vendor, but; however fixed, the goods have arrived at their destination and the *transitus* is at an end when they have gotten into the hands of someone who holds them for the purchaser and for some other purpose than that of merely carrying them to the destination fixed by the contract, or by the directions given by the purchaser to the vendor.' Judge Cave, in *Bethel* v. *Clark, supra.*

"In *Frazier & Co.* v. *Hilliard, et al.,* 2 Strob. 209, our own Court, in referring to several cases referred to as authority, said: 'These cases show that the deposit of goods when they have reached their destination in a warehouse, subject to the order and control of the buyer, is an executed delivery as effectual to defeat the right of stoppage *in transitu* as if they had been deposited in the warehouse of the buyer.'

"Counsel for Poe Manufacturing Company contends that delivery was not complete because Gilreath Manufacturing Company had not, at the time of delivery to the bleachery, exhausted its right of inspection of the goods and of the rejection for failure to come up to sample. In the first place, there is no evidence that the right of rejection continued after the delivery to the bleachery. Gilreath Manufacturing Company might well have contented itself with the warranty contained in the contract of sale. At any rate, it could not be successfully contended that the goods, having been received by the bleachery, were finished and bleached by the bleachery under the directions of the Gilreath Manufacturing Company. Certainly this would terminate any

right of rejection on the part of Gilreath Manufacturing Company.

"Mr. Williston, in his work on Sales, sec. 474, declares that where a purchaser has a right of examination, after the goods come into his possession, and this right is deferred, and the title passes. subject to the right of the buyer to throw back the title if the goods are not what the bargain required. In other words, the mere fact that the buyer would have the right to reject the goods if they did not come up to representation does not in any way interfere with his title or his possessory rights if he does not elect to hold on to the goods as was done here. The right of rejection is a favor extended to the purchaser under the terms of the contract. It was never intended thereby to give to the seller the right to destroy the purchaser's title. In the present case the contract contemplated delivery at the bleachery for account of Gilreath Manufacturing Company. Poe Manufacturing Company did not ship the goods by common carrier, but sent them by its own wagons which delivered the goods to the bleachery. Many of the authorities, then, quoted by counsel on the subject as to determination of the transit of the goods shipped by a common carrier are utterly without application. In the present case, delivery was made as already stated, not by a common carrier, but by the wagons of the seller. Delivery was made to the bleachery for account of Gilreath Manufacturing Company. The bleachery took the goods under the directions of Gilreath Manufacturing Company and under those directions altered not only the packages, but the very character of the goods themselves. To say under such circumstances that a transit (which was not a transit by common carrier) was not terminated, is not tenable The cases to which counsel refers are several of this character, goods are shipped by rail and water. Having reached the port, they are placed in the warehouse. The purpose of placing

them in there is to await subsequent carriage by water. Under such circumstances, of course, the delivery to the warehouseman is only a part of the carriage. Likewise, if grain is shipped and during the course of the carriage is placed in an elevator to be subsequently carried as under one shipment, then the placing of it in the hands of the owner of the elevator is only a part of the shipment and the right of stoppage *in transitu* is continued. But no case can be found, I opine, where a seller, by his own teams, delivers unbleached goods to a bleachery for account for the purchaser, and the goods are finished under the directions of the purchaser, their very nature being altered, where the Court held that under such circumstances there was no delivery, and that a right of stoppage *in transitu* still applies.

"In our case of *Frazier & Co.* v. *Hilliard, et al.*, 2 Strob. L. 309, the Court said: 'The general rule is that when the goods have not been paid for, the vendor, in case of the insolvency of the vendee, may retain them if they remain in his possession, or, if he has dispatched the goods to the vendee, he may stay them on the way before they have come to his possession.' (The Court then refers to several cases and continues): 'These cases show that the deposited goods, after they have reached their destination in a warehouse, subject to the order and control of the buyer as of executed delivery, is effectual to defeat the right of stoppage *in transitu* as if they had been deposited in the warehouse of the buyer and the deposit in like manner in the warehouse of the vendee divests his right to retain for the price which may be unpaid; and that complete possession may be transferred without the removal of the goods or the exercise of any act of ownership but by the mere act of delivering the order for the transfer of them to the vendee.'

"I conclude, then, that as to goods referred to as claim A, all right on the part of Poe Manufacturing Company ceased long before the receivership, and that Mr. Poe's letter seeking to rescind the sale and retake the goods was without effect, and this claim must be classed with simple claims.

"As to claim B, I find that these goods were sold by Poe Manufacturing Company to the Gilreath Manufacturing Company and invoices rendered to Gilreath Manufacturing Company, therefore, these goods were in the hands of the bleachery for account of Poe Manufacturing Company, and the bleachery had not been advised as to the sale of them to Gilreath Manufacturing Company; and were held subject to the order of Poe Manufacturing Company.

"I hold that while the title to these goods may have passed to the Gilreath Manufacturing Company, they are still in the possession of the seller's agent to be delivered only on order of Poe Manufacturing Company, which order or notice of sale was never given, and the right of stoppage *in transitu* is clear.

"I find that claim C is for goods which were sold by Poe Manufacturing Company to Gilreath Manufacturing Company, and invoices rendered to the latter company, showing goods, prices, etc. That no demand for delivery was ever made by the vendee and they were at the time of the appointment of the receiver, and still remain, in the hands of the vendor. I hold that Poe Manufacturing Company is entitled to retain possession of said goods.

*As to Claim of Alice Mills:*

"The Alice Mills sold certain goods to the Gilreath Manufacturing Company. These goods were shipped to the bleachery where they were finished, the bleachery charges being made against the Alice Mills. At the time of the shipment instructions were given to the bleachery to deliver the finished goods to Gilreath Manufacturing Company. These instructions were in the following words: 'Shipping

order, Gilreath Manufacturing Company,' which meant that the goods were to be turned over to that company. After the goods were finished Alice Mills delivered to Gilreath Manufacturing Company an order for the goods, and also an invoice showing numbers, prices, etc.   The bleachery held the goods subject to the orders of Gilreath Manufacturing Company.   On January 25, 1912, the insolvency of the Gilreath Manufacturing Company, being known or suspected, Alice Mills gave written notice to the bleachery to cancel all instructions from them to deliver goods to Gilreath Manufacturing Company, and to hold all their style No. 73 until further notice.   This was the situation at the time of the receivership.   The goods were sold on credit and on maturity of the bills a note representing the larger part of the price was taken for the goods.   This note at the time of the receivership was unmatured and was held by one of the banks.   At the time of the receivership the goods had been finished and were being held by the bleachery, subject to the order of Gilreath Manufacturing Company.

"It is manifest that the carriage was completed long prior to the receivership and notice not to deliver.   The only question is whether there was such delivery or such change of control as to preclude Alice Mills from retaking the goods until the payment of its debt.

" 'The delivery consists rather in the surrender of the possession and control of the goods than in the actual tradition of them by the seller to the buyer.   In other words, goods are delivered when they are placed in the buyer's power so that he may immediately remove them and cannot rightfully be prevented from so doing.'   Smith's Merch. Law, sec. 599.

" 'Where property sold is at the time in the custody of a third person, notice to him of the sale is sufficient to consti-

tute a delivery as against subsequent attaching creditors.' *Dempsey* v. *Gardrew,* 34 Am. R. 389.

" 'Where the bailee has notice whether he assents to the transfer or not, he is, by operation of law, bailee for buyer. He cannot thereafter disregard the buyer's rights. A delivery to the original bailor would thereafter be a tort.' Williston on Sales, sec. 454.

" 'The right of the vendor in case of insolvency of the vendee to retake goods which had been sold and which are in the hands of the bailee ends when the vendee has been furnished by the vendor with the means of controlling the possession.' *Gill* v. *Pavenstedt,* 7 Am. Law Rep. (U. S.) 672.

" 'The order for delivery, although not evidence of a contract or even a memorandum of sale, was nevertheless a thing absolutely potent to confer the right of immediate possession.' *King* v. *Jarman,* 37 Am. R. II.

"In the present case there was not only an order for the goods, but there was an invoice showing the things sold and the prices. Moreover, the bleachery had been fully advised that it was to hold the goods subject to the order of the Gilreath Manufacturing Company, and it was actually so holding the goods.

" 'Where such articles are in the hands of the vendor's bailee, the vendor's order on him for their delivery, given to and accepted by the purchaser is equivalent to delivery and acceptance of the articles, if notified to the bailee and actually or impliedly assented to by him, but not otherwise.' *King* v. *Jarman, supra.*

" 'Delivery of the evidence of title and the orders endorsed upon this was equivalent in the then situation of the property to the delivery of the property itself. This mode of transfer and delivery has been sanctioned in analogous cases by Courts of justice of England and this country.' Chief Justice Taney, in *Gibson* v. *Stevens,* 8 Howard (U. S.) 384.

*As to Claim of Osceola Commission Company:*

"Osceola Commission Company sold certain goods to Gilreath Manufacturing Company on credit. These goods were at the time in the hands of the bleachery, and were finished, baled and marked up. Osceola Commission Company issued to Gilreath Manufacturing Company invoices for goods, giving the bale numbers, prices and terms, stating "Held on your (Gilreath Manufacturing Company) order," and issued orders for the delivery of the goods. These orders were turned over to the bleachery and the goods thereafter held subject to the order of Gilreath Manufacturing Company, and were from time to time shipped out on order of the last named company. Testimony, p. 34.

"This, under the authorities already referred to, constituted such a delivery as terminated the powers of Osceola Commission Company over the goods and precluded the right to retake the goods upon the subsequent insolvency of Gilreath Manufacturing Company.

"Our own case of *Frazier & Co.* v. *Hilliard, et al.*, 2 Strob. L. 309, is conclusive on this point. The cotton in that case was held by a warfinger. The order for the cotton was delivered to the vendee, and that order delivered to the warfinger. The Court said: 'If by delivery to the warfinger of Hilliard's order (Hilliard was the seller) on the union wharves for the transfer of the 321 bales to Smith, he acquired an absolute possession of the cotton, Hilliard had no right to retake it. The authorities are strong and conclusive against Hilliard's claim.'

"Osceola Commission Company, upon the maturity of certain of its bills, took a note from the Gilreath Manufacturing Company payable at a future date. This note, defendant claims, involved a waiver of the vendor's lien, which will be hereafter considered.

### As to Claim of Lois Cotton Mills:

"I find the Lois Cotton Mills sold goods in the rough to Gilreath Manufacturing Company and issued invoices showing the goods sold, prices, terms, and shipped the goods to the bleachery for account of Gilreath Manufacturing Company. The goods were received by the bleachery and finished for the account of the Gilreath Manufacturing Company to whom the finishing costs were charged. The goods were thereafter finished at the expense of Gilreath Manufacturing Company and at the time of the receivership, were in the hands of the bleachery; and finished and baled out.

"It will thus be seen that the situation of this case is almost identical with that of claim No. 1 of Poe Manufacturing Company. The authorities are clear that under such circumstances there is, on the part of the seller, no right to retake the goods. Indeed, Mr. Geer, in his testimony, was exceedingly candid, and admitted doubt of his right to the goods themselves.

### As to the Claim of Brandon Mills:

"The facts in this claim are practically identical with the facts in the case of claim No. 1 of Poe Manufacturing Company, and the claim of Lois Cotton Mills, and for the reasons given these cases, the Brandon Mills has not the right to possession of the goods sold.

### As to Claim of Union Bleaching and Finishing Company:

"This is the aggregate of the charges made by the bleachery for finishing several lots of goods purchased from various mills and from time to time shipped by these mills to the bleachery for account of Gilreath Manufacturing Company.

"Some of these lots of goods had been finished and delivered to the purchaser. Other lots had been finished, but at the time of the receivership were being held by the bleachery subject to order of the Gilreath Manufacturing Company.

"The question is whether the costs for finishing the lots of goods delivered should be charged against the goods remaining in the hands of the bleachery in such a way as to give a lien upon these goods. The well established doctrine is that the lien of a warehouseman attaches only to the goods received by him under the same bailment; that his lien is specific applying only to the particular goods for which the particular charges are made; that only these goods are affected by such a charge which were received in such a way as to constitute one transaction. Jones on Liens, secs. 974-976.

" 'It (a warehouseman's lien) is a common law lien which is the creature of policy and is a specific or particular lien which attaches only upon each separate bailment and is lost when all the articles of each separate bailment are delivered to the bailor or his assignee.' *Shinguluer* v. *Warehouse Co.,* 84 Am. St. Rep. 655.

"The attorney for the bleachery seeks to impress upon the transactions between Gilreath Manufacturing Company and the bleachery the character of one indivisible transaction.

"The only foundation for such contention is this, to wit: Before any goods were sent to the bleachery by Gilreath Manufacturing Company, Mr. Sexton, the manager of the Gilreath Manufacturing Company, telephoned Mr. Arrington making some inquiry about the finishing, and stating that he would send over one lot of goods, and if they were finished satisfactorily that other business would be given. It seems that this lot was finished satisfactorily, and from time to time after that, goods were shipped by directions of Gilreath Manufacturing Company to the bleachery to be finished by that company. That all these shipments from several different mills constituted one transaction is a proposition calculated to stagger credulity. The shipment of each lot was, in the nature of things, a separate bailment.

14—96

It was evidently so regarded by the bleachery itself as appears from their method of bookkeeping. Each lot was kept separate, the prices made against each lot were separately stated and each lot kept separate and distinct from the others.

"It seems, then, too clear for further argument that all of these transactions did not constitute one entire transaction; but were several and that the charges for finishing each lot of goods constituted a lien only on the lot so finished. Mr. Arrington's statement, which shows how these charges were made and what lots were shipped out, will be the basis for a calculation as to the extent of the bleachery's lien.

"Counsel for defendant contends that the note which was taken by the bleachery for the price of goods in question precludes the claim of a lien upon the goods for that price. I cannot support that contention, and hold, having surrendered its note, it has the right to rely on its claim for services rendered in bleaching the goods. .

"I hold the same as to the other sellers who have surrendered notes taken for part of purchase price for goods, and are relying on accounts for goods sold. Respectfully submitted, J. W. Gray, Master."

### Judge DeVore's Decree.

*As to Claims of F. W. Poe Manufacturing Company:*

"These claims are referred to by the master under designations, respectively, as claim A, claim B and claim C.

*As to Claim A:*

"This claim is for the purchase price of certain goods which were invoiced at twelve thousand one hundred and thirty-four and 02-100 ($12,134.02) dollars. F. W. Poe Manufacturing Company sold and invoiced these goods to Gilreath Manufacturing Company. It claims, however, that these goods were never actually delivered to Gilreath Manu-

facturing Company, and that it has a vendor's lien or the right of stoppage *in transitu* as to these goods. The master disallowed this claim, holding, however, that the indebtedness should be proved as a simple unsecured debt. The matter now comes before me on the exception of F. W. Poe Manufacturing Company.

"The contract between F. W. Poe Manufacturing Company and Gilreath Manufacturing Company provided that the goods should be delivered f. o. b. at the Union Bleaching and Finishing Company. In fact, they were sent by wagon from the factory of F. W. Poe Manufacturing Company to Union Bleaching and Finishing Company, which latter company received them for the account of Gilreath Manufacturing Company under an arrangement between Union Bleaching and Finishing Company and Gilreath Manufacturing Company for the conversion and finishing of these goods at the cost of Gilreath Manufacturing Company. When these goods were delivered to Union Bleaching and Finishing Company by F. W. Poe Manufacturing Company, the transit was ended and the delivery was complete. There was no longer either any right of stoppage *in transitu* or any vendor's lien as to these goods. The exception to the master's report is, therefore, overruled. By an order of this Court heretofore made, F. W. Poe Manufacturing Company was permitted to take possession of these goods and sell them at the best possible price; the goods themselves and the money, in case of their sale, to be held subject to the decree of this Court touching the rights of the parties. The report of the master does not show whether the goods had been sold and it will, therefore, be necessary to have this matter referred to the master for the purpose of having F. W. Poe Manufacturing Company render an account of the goods sold and it is so ordered.

It is further ordered and adjudged that the said F. W. Poe Manufacturing Company shall turn over to the receiver

herein the said goods, or in case of their sale, the prices realized by the F. W. Poe Manufacturing Company. The claim of F. W. Poe Manufacturing Company, however, for the invoice price of the said goods is allowed as a simple unsecured debt.

*As to Claim B:*

"The goods designated as claim B are represented by invoices for one thousand and seventy-six and 70-100 ($1,076.70) dollars and one thousand and seventy-five and 76-100 ($1,075.76) dollars, respectively, were part of a lot of goods which F. W. Poe Manufacturing Company sent in the unfinished state to Union Bleaching and Finishing Company where they were finished for the account of F. W. Poe Manufacturing Company. While the goods were still in the possession of the Union Bleaching and Finishing Company, F. W. Poe Manufacturing Company sold them to Gilreath Manufacturing Company and issued invoices. The latter company, however, did not pay for the goods. Union Bleaching and Finishing Company had no notice of the sale nor was any order for the goods ever issued by F. W. Poe Manufacturing Company. This was the situation when it became known that Gilreath Manufacturing Company was in a bankrupt condition. Thereupon, F. W. Poe Manufacturing Company sent to the bleachery and obtained possession of the goods. In doing this, it was within its rights, as it had never parted with possession. It is, therefore, adjudged that F. W. Poe Manufacturing Company has a lien upon said goods for the amount of the purchase price, and the exception of the receiver is hereby overruled.

*As to Claim C:*

"This claim, for nine hundred and six and 61-100 ($906.61) dollars, relates to goods which were in the possession of F. W. Poe Manufacturing Company, and which that company invoiced but never delivered to Gilreath Man-

ufacturing Company.   At the time of the appointment of
the receiver, these goods were still in the hands of F. W.
Poe Manufacturing Company.   Under these circumstances,
the F. W. Poe Manufacturing Company has a lien upon the
said goods and has a right to hold them until the purchase
price is paid.   The receiver's exception as to this claim is
hereby overruled.

*As to the Claim of Alice Mills:*

"This claim is for one .thousand nine hundred and sev-
enty-eight and 74-100 ($1,978.74) dollars, and represents
the purchase price of certain goods sold to Gilreath Manu-
facturing Company; but delivery was never made of the
goods.   They were in the hands of the Union Bleaching
and Finishing Company; here they had been shipped by
Alice Mills and although Alice Mills had issued the invoice
for the goods showing the prices, numbers, etc., and had
issued an order on the Union Bleaching and Finishing Com-
pany for the goods, they were never turned over to Gilreath
Manufacturing Company nor was shipment of the goods to
Gilreath Manufacturing Company ever started.   Under
these circumstances, I hold that the right of stoppage *in
transitu* continued and that Alice Mills has a lien on the
goods or on the price realized from the sale of the goods
in case they have been sold.   And it is so ordered.

*As to the Claim of Osceola Commission Company:*

"This is for four thousand one hundred and thirteen and
55-100 ($4,113.55) dollars, representing the invoice price
of certain goods which were sold by Osceola Commission
Company to Gilreath Manufacturing Company.   At the
time of the sale, these goods were in the hands of the Union
Bleaching and Furnishing Company who had finished and
bailed the goods for the account of Osceola Commission
Company.   Having sold these goods to Gilreath Manufac-
turing Company, Osceola Commission Company issued to
Gilreath Manufacturing Company invoices showing the

bales, prices, etc. It also issued orders for the goods on Union Bleaching and Finishing Company. These goods, however, were never turned over to Gilreath Manufacturing Company nor was shipment from Union Bleaching and Finishing Company ever started. Under these circumstances, I hold that Osceola Commission Company retained its vendor's lien on the goods for the invoice price, and it is so ordered.

*As to the Claim of Brandon Mills:*

"This is a claim for one thousand eight hundred and fourteen and 48-100 ($1,814.48) dollars, representing the invoice price of certain goods sold by Brandon Mills to Gilreath Manufacturing Company. These goods were in the unfinished state. Under the terms of the contract, they were delivered to Union Bleaching and Finishing Company by whom they were to be finished at the costs and under the direction of Gilreath Manufacturing Company. By delivery to Union Bleaching and Finishing Company for this purpose, the right of stoppage *in transitu* and the vendor's lien were extinguished. It is so ordered and the exceptions of Brandon Mills are overruled.

"At the time of the appointment of the receiver, certain goods sold by Utica Knitting Mills to Gilreath Manufacturing Company, the invoice price being thirty-two and 40-100 ($32.40) dollars, and certain goods sold to Gilreath Manufacturing Company by Spool Cotton Company, the invoice price being ninety ($90.00) dollars, were in the hands of the Southern Railway Company, in the city of Greenville, S. C. These parties did not exercise the right of stoppage *in transitu*, but the railway company declined to turn the goods over to the receiver. Thereupon, the receiver took out claim and delivery proceedings. The consignors having failed to exercise the right of stoppage *in transitu* until after the goods went into the hands of the

receiver, the right is lost.   Hutchison on Carriers, para. 70 ; Williston on Sales, p. 529 ; *Byrd* v. *Brown,* 4 Ex. 786.

"The latter case is exactly in point.   The buyer went into bankruptcy and afterwards the assignee in bankruptcy demanded the goods.   The carrier refused to deliver possession and after that the seller ratified the action in refusing possession.   The Court held that the right of stoppage had not been exercised by the shipper, and that the action of the carrier in refusing to deliver was wrongful.

*As to Claim of Union Bleaching and Finishing Company:*

"This claim is for fifteen hundred and 09-100 ($1,500.09) dollars.   It represents the charges made for finishing certain goods for Gilreath Manufacturing Company.   The statement submitted by Union Bleaching and Finishing Company shows that two hundred and ninety-seven and 73-100 ($297.73) dollars of this claim represents the charges for finishing lots of goods which were completely delivered to Gilreath Manufacturing Company before the appointment of a receiver.   By delivering these goods, the bleachery lost the lien on them for its charges.   This lien cannot be extended to the other goods.   The balance of the claim, however, is for finishing goods, part of which still are on hand and this part is sufficient to secure the payment of the claim.   The master's report on this matter is, therefore, affirmed and the claim of Union Bleaching and Finishing Company to the extent of twelve hundred and two and 36-100 ($1,202.36) dollars is declared to be a preferred claim.   The balance of the claim, to wit, two hundred and ninety-seven and 73-100 ($297.73) dollars is admitted as an unsecured claim.

The goods heretofore referred to (except those on which F. W. Poe Manufacturing Company claims a lien) were, by an order of the Court, made in this cause, turned over to the receiver with instructions to keep said goods separate from the other goods belonging to Gilreath Manufacturing .

Company and if they, or any part of them be sold, to keep the proceeds of sale separate. The claims, therefore, of Alice Mills, Osceola Commission Company and Union Bleaching and Finishing Company to the extent of twelve hundred and two and 36-100 ($1,202.36) dollars, having been allowed as preferred claims, these claims should be paid by the receiver and it is so ordered.

"The receiver, however, has, under a previous order passed in this case, paid a certain part of said claims. He is, of course, to be credited with such payment and only the balance should be paid by him.

"A large number of the other claims which have been allowed by the master as unsecured debts, have received partial payments under an order previously made in this case. Due allowance should, of course, be made by the receiver in making any payments upon said claims under future orders of this Court.

"Except as is herein modified, it is ordered that the report of the master be,, and the same is hereby, sustained.

"Any persons interested in this order are hereby allowed the privilege of applying at the foot of this decree for any further order or decree which may be necessary."

*Messrs. Cothran, Dean & Cothran,* for F. W. Poe Mfg. Co. and Brandon Mills, appellants, cite: *As to right of stoppage in transitu:* Hutch. Com., sec. 757; 41 N. E. R. 71; 1 Dess. Eq. 274; 1 Brev. 316; 2 Strob. 317; 2 Benj. Sales, sec. 1245; 19 N. W. 410; 488 L. R. A. 53; 60 Am. Dec. 195; 120 S. W. 709; 59 N. W. 1097; 14 Pa. 48; 20 N. H. 154; 29 Am. Dec. 489; 30 Pa. 254; 3 M. & W. 375; 23 Wend. 614; 15 Wend. 137; 17 N. Y. 249; Fed. Cas. No. 1402; 10 P. 823; 35 Cyc. 501; 2 Mech. Sales, sec. 1573; 110 S. W. 594; 7 Cal. 213; 23 Cal. 508; 26 Ency. 1105; 19 N. W. 410; 85 Pac. 1009.

*Messrs Haynsworth & Haynsworth,* for F. W. Symmes, receiver, contra, cite: *Goods in question not subject to stop-*

*page in transitu:* 2 Strob. L. 309; 1 Des. Eq. 274; 35 Cyc. 499; 106 Mass. 67; Smith's Mer. L. 599; 37 A. R. 2; 88 A. St. R. 375; 17 N. Y. 249.

*Mr. James P. Carey,* for Alice Mills, contra.

*Mr. Wm. G. Sirrine,* for Osceola Commission Co., contra.

December 5, 1913. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This was an action for the appointment of a receiver of the Gilreath Manufacturing Company, a corporation alleged to be insolvent, for sale of assets and distribution of the same among its creditors. F. W. Symmes was appointed receiver on January 29, 1912, qualified and took charge of the business. Under an order of Court all persons having claims against the corporation were required to present and prove their claims before the master on or before a day certain. In response to this notice numerous claims were filed with the master. On May 8, 1912, the receiver presented his petition to the Court, wherein he alleged that he found in the hands of Union Bleaching and Finishing Company a large quantity of goods, which had been sold and were held upon account of Gilreath Manufacturing Company, but were claimed by various manufacturers upon the ground that said goods had never been delivered to Gilreath Manufacturing Company, but were held by the Union Bleaching and Finishing Company subject to the order of said parties, or were subject to liens in their favor for the purchase price, which had not been paid. These parties were F. W. Poe Manufacturing Company, Brandon Mills, Alice Mills, Osceola Commission Co.; that the goods so held were needed for the purpose of filling outstanding orders, which had been taken by Gilreath Manufacturing Co., and asking that he be allowed to withdraw said goods from the Union Bleaching and Finishing Co., the

claims of said parties to be transferred to the manufactured product and proceeds of sale, which should be kept separate.

On March 11, 1912, by consent of all parties, an order was signed by Judge Memminger in conformity to the prayer of the petition. Under said order the receiver withdrew from the Union Bleaching and Finishing Company the goods of the invoice value stated in master's report.

On July 5, 1912, by consent, Judge Prince signed an order modifying the previous orders, and permitting F. W. Poe Mfg. Co. to sell the goods referred to in the petition, which had not been delivered to the receiver under said orders, he having suspended manufacturing, the proceeds of sale to be kept separate by the said F. W. Poe Mfg. Co., subject to the orders of the Court, the proceeds standing in the place of the goods themselves, and to be held subject to the rights of the receiver and Union Bleaching and Finishing Company, except those previously delivered to the receiver. The master held references, and testimony was taken in reference to these claims.

The master filed his report on October 23, 1912, wherein he found in favor of F. W. Poe Mfg. Company's claim for a part and against it for the greater part; against the Brandon Mills' claim; against the Lois Cotton Mills' claim; against the Alice Mills' claim; against the Osceola Commission Company's claim. To this report the F. W. Poe Mfg. Co. and Brandon Mills, Alice Mills and Osceola Commission Company filed exceptions. The case was heard by Judge DeVore at November term, 1912, upon the exceptions to the master's report, and on December 9, 1912, he filed his decree, in which he sustained the master as to the claim of F. W. Poe Mfg. Co., and reversing the master as to the Alice Mills' claim, and the Osceola Commission Company's claim, and sustaining the master as to the Brandon Mills' claim and the Union Bleaching and Finishing Company's claim.

For the proper understanding of the case both the report of the master and decree of Judge DeVore should be set out in the report of the case. Upon entry of judgment, F. W. Poe Mfg. Co. and Brandon Mills appeals, and the receiver also appeals and questions the correctness of the decree. The exceptions raised by the F. W. Poe Mfg. Co. question the Circuit Judge's decree in confirming the master's report in allowing a small part of their claim and disallowing the major part thereof in so far as a preferred lien is concerned, and disallowing a similar claim of the Brandon Mills. The receiver by his exceptions questions the correctness of the Circuit Judge's decree in not sustaining his exception to the master's report as to the F. W. Poe Mfg. Co.'s claim, and in holding that it held a lien upon the goods designated as Claim B, and represented by two bills, $1,076.70 and $1,075.76, and questions his findings and holdings as to the Alice Mills' claim and the Osceola Commission Company's claim.

The sole question raised by the exceptions of the appellants, the F. W. Poe Mfg. Co. and Brandon Mills, is their right to exercise the right of stoppage *in transitu* under the circumstances developed by the evidence. A reading of the evidence shows that F. W. Poe Mfg. Co. is engaged in the manufacture of cotton goods, in the gray, as it is called, that is, unbleached; their factory is just outside the city of Greenville. In the fall of 1911 Gilreath Mfg. Co. was engaged in the manufacture of under garments; their factory was located within the city limits of the city of Greenville. They ordered a lot of unbleached goods from F. W. Poe Mfg. Co., amounting to $12,134.02, to be made up into garments at their factory; not being able to use them in their unbleached state, the goods were sold f. o. b. Union Bleaching and Finishing Co., upon ten days' credit, in various bills, dated November 9, 18, 21 and 23, and December 15, 1911. The goods were delivered by the wagons of the Poe Mills at the bleachery; there they were booked to the account of the

Gilreath Mfg. Co., at whose direction they were to be finished and at whose orders delivered at bleachery for transportation to factory of Gilreath Mfg. Company. The latter was charged with the finishing charges. The Poe Mfg. Co. had the goods insured for their protection, and Mr. Poe's evidence was that the shortest possible credit was given so that if they were not paid for within the time of credit, which was necessarily shorter than the time required for finishing, he could attach them before delivery to the Gilreath Company. In January, 1912, Gilreath Mfg. Co. became insolvent, and on January 22, 1912, the appellant, the Poe Mfg. Co., gave written notice to the Union Bleaching and Finishing Co. that they claimed the right of stoppage *in transitu* and not to deliver the goods to the Gilreath Mfg. Co. The receiver was appointed for the Gilreath Company, as an insolvent corporation, on January 29, 1912. At this time the goods in question were in the possession of the Union Bleaching and Finishing Co., and had not reached the actual custody of the Gilreath Mfg. Co.

There is no question but that the seller has the right of stoppage *in transitu* after he has sold the goods on credit and delivered them to a carrier, warehouseman or other intermediary, for delivery to the buyer, upon discovery of the buyer's insolvency, to retake the goods before they have reached the actual possession of the buyer, and enforce his lien against the goods for the purchase price. In Hutch. Carr. (3d ed.), sec. 757, it is said: "It is a right founded upon the plain reason of justice and equity, that one man's goods shall not be applied to the payment of another man's debts."

In *Fraser v. Hilliard*, 2 Strob. Law 309, the Court says: "The general rule is that when the goods have not been paid for, the vendor, in case of insolvency of the vendee, may retain them if they remain in his possession, or, if he has dispatched the goods to the vendee, he may stay them on the way before they come into his possession." After referring

to several cases, the Court says: "These cases show that the deposited goods, after they have reached their destination in a warehouse, subject to the order and control of the buyer as of executed delivery, is effectual to defeat the right of stoppage *in transitu* as if they had been deposited in the warehouse of the buyer, and the deposit in like manner in the warehouse of vendee divests his right to retain for the price which may be unpaid; and that complete possession may be transferred without the removal of the goods or the exercise of any act of ownership, but by the mere act of delivering the order for the transfer of them to the vendee." By this case, it will be seen that the right to exercise stoppage *in transitu* is not defeated where goods are placed in a warehouse unless they are subject to the control and order of the buyer and further that there can be no delivery by a mere order to that effect unless the order is actually delivered and demand made under it.    "A clear and unequivocal case of the termination of the transit should be made out by the evidence before the vendor should be deprived of the right of stoppage."    *Rogers* v. *Schneider* (Ind.), 41 N. E. R. 71.

In the case of *Parker* v. *McIver*, Dec. Eq. 274, holds that there must be an actual delivery to cut off the right of stoppage *in transitu*.    35 Cyc. 499, says: "But the giving of the delivery orders is not alone a delivery of the goods so as to terminate the transit unless such is the understood custom of the particular trade or the carrier attorns to the holder of the order."    In the case of *Mohr* v. *Boston,* 106 Mass. 67, it was held that the fact that the goods were transferred upon the records of the warehouse to the buyer did not affect the seller's right of stoppage.    "Goods are delivered when they are placed in the buyer's power, so that he may immediately remove them, and cannot rightably be prevented from so doing."    "The right of stoppage *in transitu* is extinguished only by actual and complete delivery of the goods consigned to the vendee or to some agent of and for him."    Smith's Mercantile Law, 599.    "The vendee must have the means of

controlling the possession before the right of stoppage is cut off." *Callahan* v. *Babcock,* 8 Am. Rep. 63. "The general rule· in this class of cases is that while the goods remain in the possession of persons concerned in their transportation to the place of destination named by the purchaser, they may, in the event of his failure, be reclaimed by the seller. It is not material whether the person ·in whose possession they are when the seller interposes his claim be a carrier, a warehouse keeper, a wharfinger, packet, or other depository, or an agent for the purpose of forwarding, nor by which of the parties of the sale he was employed. He may be the agent of the purchaser, designated, paid, and employed by him, yet if the purpose of his employment is to expedite the property towards its destination, or to aid those engaged in forwarding it, the seller's right to stay the final delivery continues." *Harris* v. *Pratt,* 17 N. Y. 249.

"Goods sold are considered *in transitu* as regards that right, until actually delivered to the buyer, or brought to some place appointed by him as their final destination, and not merely as a stage in their progress to such destination." *Atkins* v. *Colby,* 20 N. H. 154. "The right of stoppage *in transitu* of goods sold continues whilst they remain in the hands of a warehouseman, though at the place at which they are directed to be sent; if that be an intermediate point between the place of sale and the ultimate destination of the goods." *Covell* v. *Hitchcock,* 23 Wendel's Rep. 611.

The evidence in this case shows the appellants sold to the Gilreath Mfg. Co: unbleached goods and invoiced them to it. The goods were to be delivered to the Union Bleaching and Finishing Co., an intervening independent contractor, to be bleached and finished, and then delivered to the Gilreath Mfg. Co. The Gilreath Mfg. Co. and Union Bleaching and Finishing Company were over three miles apart. When the goods were delivered to the Union Bleaching and Finishing Co. they were not actually, delivered to the Gilreath Mfg. Co., and had not reached the ultimate destination con-

templated by the parties to the contract. Something had to be done to the goods before they are delivered to the consignee. The Union Bleaching and Finishing Co. was in possession, not as agent of either party, but under a contract to bleach the goods for compensation to itself, and then deliver to the buyer. We think his Honor was in error in not allowing the whole of claims of appellants, F. W. Poe Mfg. Co. and Brandon Mills, as preferred liens, and in not holding that they had the right to exercise the right of stoppage *in transitu,* and the exceptions of these appellants are sustained.

The exceptions of the appellant, F. W. Symmes, receiver, are overruled, for the reasons given in sustaining the exceptions of the F. W. Poe Mfg. Co. and Brandon Mills. The decree of Judge DeVore should be modified in accordance with the views announced in this opinion.

Judgment modified.

MR. JUSTICE HYDRICK. I think the judgment of the Circuit Court should be affirmed, for the reasons therein stated, and also for the reasons stated by the master for denying the right of stoppage *in transitu* of the goods described in claim A of F. W. Poe Mfg. Co. and the claim of Brandon Mills. Suppose Gilreath had bought of Poe cloth to make a suit of clothes for himself, and Poe had by his directions, sent it to Gilreath's tailor to be cut out and made for Gilreath, and the tailor had received it for account of Gilreath, and had cut out and made the suit for him and charged him for the work. Could Poe prevent delivery of the suit to Gilreath under the right of stoppage *in transitu?* The undisputed facts make the analogy between the actual and the supposed case complete. I think delivery of the goods to the tailor would be held to be delivery to Gilreath and the transit ended there. So, in this case, delivery to the bleachery was delivery to Gilreath Mfg. Co., and the transit was ended there.