## 9740

## PHILLIPS-PATTERSON CO. v. NORTHWESTERN R. CO. OF SOUTH CAROLINA.

### (93 S. E. 868.)

1. CARRIERS — STORAGE IN TRANSITU — SUFFICIENCY OF NOTICE. — Consignor's letter to carrier stating that, "We will thank you to hold up delivery until you receive our telegraphic instructions, etc.," *held* sufficient notice to stop delivery.

2. CARRIERS—SALES—STOPPAGE IN TRANSITU—EFFECT—CARRIER'S LIABILITY.—Upon carrier's receipt of consignor's notice for stoppage *in transitu,* title became revested in the consignor vendor, and carrier became liable for agent's failure to stop delivery.

Before PRINCE, J., Sumter, Fall term, 1916.   Reversed.

Action by Phillips-Patterson Company against Northwestern Railroad Company of South Carolina.   Defendant's motion for direction of a verdict overruled upon the first ground, and sustained as to the second and third grounds, and plaintiff appeals.

*Messrs. A. S. Merrimon* and *Marion W. Seabrook,* for appellants.   *Mr. Seabrook* cites: *As to stoppage in transitu:* 74 S. C. 360; 23 S. C. 290; 80 S. C. 194; 18 Ohio Ct. R. 333; 10 Ohio Cir. Dec. 182; 4 Dec. Digest 126; 104 S. W. 402; 79 Me. 327; 9 Atl. 895; 1 Am. St. Rep. 310; 92 S. C. 528; 75 S. E. 973; 16 Md. 122; 77 Am. Dec. 284; 22 Cyc. 1256; 35 Cyc. 495.   *Antecedent indebtedness:* 14 Cyc. 431. *Sight draft with bill of lading attached:* 81 S. C. 226; 62 S. E. 215.   *Conversion:* 38 Cyc. 1559 and 2011; Civil Code, sec. 2570; 52 S. E. 802; 124 Ga. 482; 82 S. E. 784; 6 Cyc. 472.   *Suppression of evidence:* 75 S. E. 176; 70 S. E. 1030. *Affirmative defense:* 84 S. C. 117; 65 S. E. 987; 88 S. C. 178; 43 S. C. 26.   *Contradicting witness:* 71 S. C. 150; 50 S. E. 781; 16 Cyc. 945.

FOOTNOTE.—As to stoppage *in transitu,* see notes in 3 L. R. A. 647, 4 *Ib.* 782, 11 *Ib.* 347 to 349.

*Mr. John H. Clifton,* for respondent, asks Court to review 23 S. C. 290 and 74 S. C. 360, and cites: *As to stoppage in transitu:* 80 S. E. 194; 88 Pa. St. 264; 1 Wheat. 208; 2 Dall. 180; 73 Hun. 398. *As to stipulation in reference to filing claim:* 71 S. C. 506; 88 S. C. 360; 84 S. C. 249.

July 7, 1917.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for actual and punitive damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant, in failing and refusing to stop certain goods in transit, which had been shipped by the plaintiff to C. B. Shuler & Co.—that being the name under which W. A. Shuler, the agent of the defendant at Rembert, S. C., was then doing business. The plaintiff also claimed certain penalties under the statutes of this State.

The defendant denied the allegations of the complaint and set up as a defense that it was a carrier of interstate commerce at the times mentioned in the complaint, and that the penalty statutes of this State are unconstitutional. The defendant also interposed the defense that the plaintiff did not file with the defendant a notice of its claim within the time required by law.

At the close of the testimony the defendant made a motion for a nonsuit, on the following grounds:

"First. That, under the bills of lading admitted in evidence, no cause of action can be maintained, unless it appears that the plaintiff filed a claim in writing, demanding payment of the alleged loss within four months from the date of the bill of lading. Second. That there is no evidence that at the time of shipment, or any of the alleged shipments, that the firm of C. B. Shuler & Co. were then insolvent.

Third. That there is no evidence that the plaintiffs knew of the insolvency at that time, or that they attempted to stop the transit of the goods, for the reason that the firm of C. B. Shuler & Co. were then insolvent, or believed to be insolvent, or that the fact of insolvency in any way entered into the shipment. Fourth. There is no evidence of delivery of the lard sued for, nor is there any evidence that the defendant ever received it, or had it in its possession; the contracts of carriage made between the parties absolved the defendant from responsibility, except under the bills of lading and the bills of strict liability for loss occurring while in its possession; that there is no evidence of conversion by the defendant, and, if there was conversion, the act is without application, and, if applicable, was unconstitutional as being a burden upon interstate commerce and an intervention of congressional action."

His Honor, the presiding Judge, overruled the first ground, stating that there was some testimony that the claim was filed. He sustained the second and third grounds for the following reasons:

"I hold that there is no right—no legal right—to stop goods in transit that have been shipped on bill of lading to a given consignee, except the right to stop them when the consignee becomes insolvent, and the vendor learns of the insolvency after the shipment. I hold that it is not competent for a consignor to stop goods in transit merely for the purpose of enforcing the payment of another debt. * * *

"I hold in this case there is no evidence that the consignor ever attempted to stop the goods in transit because of the insolvency of the consignee. I hold that there is no evidence that that was the reason that prompted consignor to attempt the stoppage of the goods in transit. * * *

"In the absence of any testimony as to his debts and when they were incurred—there is absolutely no testimony in this case that there were any creditors except the consignor at that time, that is, at the time of the attempted stoppage in

transit, so I sustain the demurrer on the ground that the consignor in this case has not offered testimony that would warrant his stopping the delivery of the goods in transit, shipped on open bill of lading to the consignee. I hold that where a consignor desires to protect his rights, get his money for his goods shipped, he has adequate remedy for that, to ship them to his own order, order notify, and attach on a draft—send the bill of lading with draft attached—and when the draft is paid, why the consignee could have gotten his goods, otherwise he could not. He could have saved himself."

The plaintiff introduced in evidence the following letter, which was received by the defendant while the goods were in transit, for the purpose of showing notice to stop the goods *in transitu:* "November 19, 1914. Agent Ry. Co., Rembert, S. C.—Dear Sir: We have various goods en route to your station consigned to C. B. Shuler & Co., and we will thank you to hold up delivery of these shipments, until you receive our telegraphic instructions to deliver the same, which we will, no doubt, give you in the next day or two, or as soon as some matters are adjusted between ourselves and consigee, covering which we are now in correspondence with them. Yours very truly, Phillips-Patterson Co."

Our construction of this writing is that it was sufficient in form to give necessary notice. It may be divided into two parts, to wit: First, as notifying the defendant to stop the delivery of the goods; and, second, not to deliver them without the plaintiff's consent. The only uncertainty related to the length of time the goods were to be held after they had been stopped; but the direction to stop the goods were certain and unconditional.

The moment this notice was received the title to the goods became revested in the plaintiff, and the defendant became liable for the failure of its agent to stop the delivery of them to any one but the plaintiff, or a party named by it.

The rule is thus stated in *Pool v. Ry.*, 23 S. C. 286:

"The carrier is not bound to know whether the consignor is exercising his right to stop delivery upon proper and legal grounds or not.  All that he is bound to know is that the consignor has ordered a stoppage before delivering, and, if so, his delivery afterwards becomes illegal.  If this be the law (and of this there seems no doubt), the refusal of a carrier to deliver, with an order in his hands from the consignor not to deliver, is a full protection to him; the refusal under such circumstances affording no cause of action against him to the vendee.  As we have said, the order of nondelivery revests the possession of the property in the vendor in contemplation of law, and transfers the cause of action of the vendee for nondelivery from and against the carrier to and against the vendor.  From this it follows that the defendant below had not only the right to refuse the demand of the plaintiff, but was legally bound to do so."

"The case of *Pool v. Railroad Co.,* 23 S. C. 290, states the principle that in a contest between the vendee and vendor, the vendor cannot vindicate an attempt to exercise the right of stoppage *in transitu,* unless he shows that the vendee was insolvent, but in a contest between the vendee and carrier, all that is necessary to stop the goods in the hands of the carrier is a simple notice from the consignor, forbidding delivery to the vendee.  The effect of such notice is to revest possession in the vendor, and if the carrier deliver to the vendee after such notice, he becomes liable to the vendor. The same principle would apply in a suit by the vendor against the carrier. . If after such notice possession of the goods revests in the vendor, it is a breach of the vendor's right for the carrier to deliver to the vendee, contrary to the instructions of the vendor."  *Faust v. Ry.,* 74 S. C. 360, 54 S. E. 566; *Monaghan Mills v. Mfg. Co.,* 96 S. C. 195, 80 S. E. 194.

The exceptions raising this question are sustained.

His Honor ruled that the penalties cannot be recovered.

This ruling is sustained by recent decisions of the United States Supreme Court, and followed in late decisions of this Court, on the ground that such statutes are unconstitutional, as interfering with interstate commerce.

The respondent's attorney gave notice of additional grounds, upon which he would ask that the order be sustained. They only raise questions that have already been considered.

It is the judgment of this Court that the order of the Circuit Court be reversed (except in so far as it overrules the first ground of the motion and sustains the ground that the penalty statutes are unconstitutional), and that the case be remanded for a new trial.